OPINION
{¶ 1} Defendant-appellant VFW Post 431 appeals from its conviction and sentence upon one count of Gambling, in violation of R.C. 2915.02(A)(2). VFW contends that the facts of this case do not constitute a violation of R.C. 2915.02(A)(2), and that the affirmative defense provided in the charitable organization exception under R.C. 2915.02(D)(1) is applicable. We conclude that VFW failed to meet the requirements necessary to establish the affirmative defense provided in the charitable organization exception under R.C. 2915.02(D)(1), and, more importantly, by entering a plea of no contest, VFW waived its right to present additional factual allegations and an affirmative defense.
 {¶ 2} VFW contends that R.C. 2915.01 et seq. is unconstitutional, because it is void for vagueness, thereby violating VFW's right to due process of law. We conclude that R.C. 2915.02(A)(2) is not void for vagueness, because it clearly defines its prohibitions and provides a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited, so that he or she may act accordingly. We also conclude that R.C. 2915.02(A)(2) provides sufficient standards to prevent arbitrary and discriminatory enforcement.
 {¶ 3} VFW contends that R.C. 2915.01 et seq. violates the Equal Protection Clause, because it allows some tax-exempt charitable organizations, 501(c)(3) organizations, to conduct charitable gambling while denying veterans' organizations, 501(c)(19) organizations, which are also eligible for tax-exempt status, the opportunity to do so, thereby discriminating between organizations in similar circumstances. The General Assembly's choice to include only 501(c)(3) organizations within the R.C. 2915.02(D) exemptions is supported by the legitimate state interest not to prohibit certain gambling activities, the proceeds of which are used exclusively for public and charitable purposes. Because the exemptions set forth in R.C. 2915.02(D) are rationally related to that interest, we conclude that there is no equal protection violation. Whether 501(c)(19) organizations should also be exempted from prosecution under R.C. 2915.02 is a question for the General Assembly, and it is not for this court to substitute its judgment on this issue of legislative policy.
 {¶ 4} VFW then contends that R.C. 2915.01 et seq. is unconstitutional, because it violates the separation of church and state, VFW's freedom of association, and VFW's freedom of speech. We conclude that VFW's arguments are without merit.
 {¶ 5} VFW contends that the trial court erred in denying its motion to suppress, because the two warrantless entries onto the VFW premises, used to gather information to obtain a search warrant, were unlawful, thereby vitiating the search warrant obtained subsequent to the illegal entries. We conclude that VFW freely and voluntarily consented to both entries by the law enforcement officer onto its premises, and therefore, the two entries were not unlawful.
 {¶ 6} VFW contends that its sentence is void, because it was placed on probation for five years and the fine imposed was not suspended. VFW argues that if the fine is not suspended, there is no effectual purpose for probation and the sentence is void. Because the trial court did suspend $6,000 of the $7,500 fine, upon the condition of no future violations of the gambling law, VFW is mistaken and this argument is without merit.
 {¶ 7} VFW contends that the trial court judge erred in failing to recuse herself prior to ruling on VFW's motion to dismiss, motion to suppress, and motion for the disclosure of a confidential informant. VFW contends that the trial court judge's denial of the motions, after holding defense counsel in contempt, demonstrated bias and prejudice towards VFW and denied VFW due process of law. We conclude that we are without authority to pass upon disqualification of a common pleas court judge or to void the judgment of the trial court upon that basis, because only the Chief Justice of the Ohio Supreme Court or his designee may disqualify a court of common pleas judge pursuant to Article IV, Section5(C) of the Ohio Constitution. VFW has waived this issue on appeal, because it failed to file an affidavit of disqualification and thereby failed to follow the mandates of R.C. 2701.031.
 {¶ 8} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 9} In March, 2002, VFW Post 431 was indicted upon one count of Gambling, in violation of R.C. 2915.02(A)(2), a felony of the fifth degree due to a previous gambling conviction. Regina M. Slaughter, a VFW employee, was indicted upon one count of Tampering with Evidence, in violation of R.C. 2921.12(A)(1), but this count was later dismissed upon the State's motion.
 {¶ 10} VFW filed a motion to dismiss, a motion to suppress, and a motion for the disclosure of a confidential informant referenced in an affidavit used to establish probable cause for a search warrant to search VFW. A hearing was conducted before the Honorable Mary E. Donovan on the motion to suppress. During the suppression hearing, Judge Donovan held defense counsel in criminal contempt of court, and imposed a $500 fine, for defense counsel's conduct in interrupting the prosecutor, expressing disagreement with the trial judge's ruling on one occasion, and requesting that the trial judge hold her voice down after she spoke loudly when she admonished counsel to stop bickering.[1] Thereafter, the trial court denied the motion to suppress, finding that probable cause existed for the search warrant based upon the affidavit. The trial court also denied VFW's request for disclosure of the confidential informant. Finally, the trial court denied VFW's motion to dismiss.
 {¶ 11} This case was then transferred to the Honorable Michael L. Tucker. VFW entered a plea of no contest to the one count of Gambling. Judge Tucker found a factual basis to support the charge and plea, accepted the plea of no contest, and found VFW guilty. Judge Tucker sentenced VFW to community control sanctions, for a period not to exceed five years, and ordered VFW to pay court costs, a supervision fee, and a fine of $7,500, $6,000 of which was suspended upon the condition of no future violations of the gambling law. From its conviction and sentence, VFW appeals.
 II {¶ 12} VFW's first, second, third, and sixth assignments of error are as follows:
 {¶ 13} "The facts of the case do not present a basis for any prosecution of the appellant under the provisions of R.C. 2915.02, as no criminal act occurred.
 {¶ 14} "Any reference to a provision of the internal revneue [sic] code to supply the definition of an element of an offense is prohibited[.]
 {¶ 15} "The trial court erred in failing to rule R.C. 2915.01, et seq. unconstitutional in its entirety or, alternatively, in its application to the vfw post 431 under the facts of this case[.]
 {¶ 16} "The trial court erred when it failed to enter a finding of not guilty to the no contest plea to one count of felony gambling (R.C. 2915.02
with prior offense) after the prosecution dismissed all other counts. the facts set forth in the indictment failed to establish the elements of a criminal violation of R.C. 2915.02. The state did not meet its burden of proof of each and every element of felony gambling beyond a reasonable doubt."
 {¶ 17} Because VFW presents similar and related arguments under its first, second, third, and sixth assignments of error, we address them together.
 {¶ 18} VFW was convicted upon one count of Gambling, in violation of R.C. 2915.02(A)(2). The applicable version of R.C. 2915.02(A)(2), S.B. 37, effective July 26, 1997, states that "[n]o person shall * * * [e]stablish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit[.]"[2]
 {¶ 19} VFW first contends that its conviction for Gambling cannot stand, because VFW is a charitable organization, and R.C. 2915.02 does not apply to charitable organizations.
 {¶ 20} R.C. 2915.02 provides exceptions for charitable organizations including the following:
 {¶ 21} "(D) This section does not apply to any of the following:
 {¶ 22} "(1) Schemes of chance conducted by a charitable organization that is, and has received from the internal revenue service a determination letter that is currently in effect stating that the organization is, exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, provided that all of the money or assets received from the scheme of chance after deduction only of prizes paid out during the conduct of the scheme of chance are used by, or given, donated, or otherwise transferred to, any organization that is described in subsection 509(a)(1), 509(a)(2), or 509(a)(3) of the Internal Revenue Code and is either a governmental unit or an organization that is tax exempt under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, and provided that the scheme of chance is not conducted during, or within ten hours of, a bingo game conducted for amusement purposes only pursuant to section 2915.12 of the Revised Code[.]"
 {¶ 23} R.C. 2915.01(H) defines "charitable organization" as "any tax exempt religious, educational, veteran's, fraternal, service, nonprofit medical, volunteer rescue service, volunteer fire fighter's, senior citizen's, youth athletic, amateur athletic, or youth athletic park organization. An organization is tax exempt if the organization is, and has received from the internal revenue service a determination letter that currently is in effect stating that the organization is, exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3), 501(c)(4), 501(c)(8), 501(c)(10), or 501(c)(19) of the Internal Revenue Code. To qualify as a charitable organization, an organization, except a volunteer rescue service or volunteer fire fighter's organization, shall have been in continuous existence as such in this state for a period of two years immediately preceding either the making of an application for a bingo license under section 2915.08 of the Revised Code or the conducting of any scheme of chance or game of chance as provided in division (C) of section 2915.02 of the Revised Code."
 {¶ 24} Although it appears to be undisputed that VFW is, in fact, exempt from federal income taxation under subsection 501(c)(19) of the Internal Revenue Code, the record before us does not include a determination letter, currently in effect, from the IRS stating that VFW is exempt. Thus, there is no showing the VFW is a charitable organization as defined in R.C. 2915.01(H). However, even if VFW is a charitable organization under R.C. 2915.01(H), R.C. 2915.02(D)(1) requires more than that fact in order to meet the exception. VFW must be a charitable organization that "has received from the internal revenue service a determination letter that is currently in effect stating that the organization is, exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, provided that all of the money or assets received from the scheme of chance after deduction only of prizes paid out during the conduct of the scheme of chance are used by, or given, donated, or otherwise transferred to, any organization that is described in subsection 509(a)(1), 509(a)(2), or 509(a)(3) of the Internal Revenue Code and is either a governmental unit or an organization that is tax exempt under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, and provided that the scheme of chance is not conducted during, or within ten hours of, a bingo game conducted for amusement purposes only pursuant to section 2915.12 of the Revised Code[.]"
 {¶ 25} R.C. 2915.02(D) establishes an affirmative defense, and VFW has the burden of proof to show, by a preponderance of the evidence, that the affirmative defense has been established in this case. Hurt v. StateLiquor Control Comm'n, Montgomery App. No. 16232, 1997 WL 736506, at *6. VFW has failed to meet this burden. The record shows that VFW has failed to meet all of the requirements of R.C. 2915.02(D)(1). The record does not include a determination letter, currently in effect, from the IRS stating that VFW is exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code. There is no evidence in the record that all of the money or assets received from the scheme of chance after deduction only of prizes paid out during the conduct of the scheme of chance were used by, or given, donated, or otherwise transferred to, any organization that is described in subsection 509(a)(1), 509(a)(2), or 509(a)(3) of the Internal Revenue Code and is either a governmental unit or an organization that is tax exempt under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code. There is also no evidence that the scheme of chance was not conducted during, or within ten hours of, a bingo game conducted for amusement purposes. Thus, VFW has failed to meet all of the requirements necessary to establish the affirmative defense provided in the charitable organization exception under R.C. 2915.02(D)(1).
 {¶ 26} VFW argues that the facts of this case do not constitute a violation of R.C. 2915.02(A)(2), and then proceeds to argue that the affirmative defense provided under R.C. 2915.02(D)(1) applies to this case. However, VFW entered a no-contest plea. The trial court accepted this plea and found VFW guilty. Pursuant to Crim.R. 11(B)(2), a no-contest plea is an admission of the truth of the facts alleged in the indictment. The indictment against VFW states, in pertinent part, that "POST 431 VFW, on or about the 8th day of February in the year two thousand and two in the County of Montgomery, aforesaid, and State of Ohio, did establish, promote or operate or knowingly engage in conduct that facilitated any scheme or game of chance conducted for profit, having previously been convicted in the State of Ohio on November 20, 1998, of a gambling offense, to-wit: Operating a Gambling House, in the case of State of Ohio versus VFW Post 431, being Case Number 98 CRB 14579, in the Dayton Municipal court contrary to the form of the statute (in violation of Section 2915.02(A)(2) of the Ohio Revised Code) * * *."
 {¶ 27} When VFW entered a plea of no contest in this case, it admitted that the facts alleged in the indictment were true. "[T]he defendant who pleads no contest waives the right to present additional affirmative factual allegations to prove that he is not guilty of the charged offense. By pleading no contest, the defendant waives his right to present an affirmative defense." Stern v. Mascio, 75 Ohio St.3d 422, 424,1996-Ohio-93, 662 N.E.2d 370, internal citations omitted. "`The essence of the `no contest' plea, is that the accused cannot be heard in defense.'" Id. at 372-373, citation omitted. When VFW entered a plea of no contest, VFW waived its right to present additional factual allegations constituting an affirmative defense.
 {¶ 28} We conclude that VFW not only failed to meet the requirements necessary to establish the affirmative defense provided in the charitable organization exception under R.C. 2915.02(D)(1), it also, by entering a plea of no contest, waived its right to present additional factual allegations constituting an affirmative defense.
 {¶ 29} VFW contends that R.C. 2915.01 et seq. is unconstitutional, because it is void for vagueness, thereby violating VFW's right to due process of law. VFW argues that R.C. 2915.01 et. seq. is unconstitutionally vague because it fails to give a person of ordinary intelligence fair notice of what conduct is prohibited by the statute. VFW argues that R.C. 2915.01 et. seq. is vague because it is not self-contained, but rather refers to an extrinsic resource, the Internal Revenue Code, for notice. Specifically, VFW argues that R.C. 2915.01 et. seq. fails to define "charitable organization" and "tax exempt," without referring to the Internal Revenue Code for definitions. VFW contends that this utilization of the Internal Revenue Code as a basis for criminal prosecution under R.C. 2915.01 et. seq. is an unlawful delegation of the State's legislative power to a federal administrative authority.
 {¶ 30} "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute `abut(s) upon sensitive areas of basic First Amendment freedoms,' it `operates to inhibit the exercise of (those) freedoms.' Uncertain meanings inevitably lead citizens to `steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked.'" Grayned v. City of Rockford (1972), 408 U.S. 104, 108-109,92 S.Ct. 2294, 33 L.Ed.2d 222.
As stated above, R.C. 2915.02(D) provides that certain organizations are permitted to engage in charitable gambling. To determine whether an organization qualifies to engage in charitable gambling, the applicable statutes refer to the Internal Revenue Code. In State v. Posey, the Ohio Supreme Court stated that "[t]he exemptions enumerated in R.C. 2915.02(D) are keyed to classifications created by Congress in subsection 501(c) of the Internal Revenue Code. It is certainly within the province of the General Assembly to incorporate federal statutory provisions into state legislation." State v. Posey (1988), 40 Ohio St.3d 420, 424, 534 N.E.2d 61, citing Gabalac v. New Universal Congregation of Living Souls (1977),55 Ohio App.2d 96, 98, 379 N.E.2d 242.
 {¶ 31} We conclude that VFW's contentions are without merit. To meet the charitable organization exception to R.C. 2915.02, the charitable organization must be a tax-exempt organization under the specified sections of the Internal Revenue Code and must submit the proceeds, received from the scheme of chance, to a tax-exempt organization, as specified under certain sections of the Internal Revenue Code. Being designated a tax-exempt organization is only one condition necessary to meet the charitable organization exception under R.C. 2915.02. "Federal tax exempt status is merely a condition precedent to the exercise of the acts authorized by the statute, [and] * * * does not constitute a delegation of legislative power." Gabalac, 55 Ohio App.2d at 98, citations omitted.
 {¶ 32} We conclude that the references to the Internal Revenue Code within R.C. 2915.01 et. seq. do not constitute an unlawful delegation of the State's legislative power. Pursuant to Posey, supra, it is within the General Assembly's province to incorporate sections from the Internal Revenue Code in its legislation.
 {¶ 33} VFW also argues that where the Internal Revenue Code is used to define an element of an offense, it must be filed with the Secretary of State, Director of Legislative Service and Joint Committee on Agency Roll Review. VFW argues that failure to do so renders the statute void.
 {¶ 34} The crime in this case, Gambling, is clearly defined in R.C.2915.02(A)(2), which states that "[n]o person shall * * * [e]stablish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit[.]" The terms used in R.C.2915.02(A)(2) are clearly defined in R.C. 2915.01 including the terms "conduct," "scheme of chance," "game of chance," and "scheme or game of chance conducted for profit." Although the Internal Revenue Code is referenced under the affirmative defense in R.C. 2915.02(D), no reference is made to the Internal Revenue Code to supply a definition of any element of the offense of Gambling.
 {¶ 35} We conclude that R.C. 2915.02(A)(2) is not void for vagueness, because it clearly defines its prohibitions and provides a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited, so that he or she may act accordingly. We also conclude that R.C. 2915.02(A)(2) provides sufficient standards to prevent arbitrary and discriminatory enforcement.
 {¶ 36} VFW contends that R.C. 2915.01 et seq. violates the Equal Protection Clause, because it allows some tax-exempt charitable organizations — 501(c)(3) organizations — to conduct charitable gambling while denying veterans' organizations — 501(c)(19) organizations — which are also eligible for tax-exempt status, the opportunity to do so, thereby discriminating between organizations in similar circumstances.
 {¶ 37} In Posey, the appellants, Fraternal Order of Eagles, a 501(c)(8) non-profit fraternal organization, contended that R.C. 2915.02
was unconstitutional because it violated the equal protection clause in exempting from prosecution charitable gambling conducted by certain charitable organizations but not others. Posey, 40 Ohio St.3d at 423. The Ohio Supreme Court stated that "for purposes of the R.C. 2915.02(D) exemptions, the General Assembly chose to include only 501(c)(3) organizations. We find this choice to be supported by the legitimate state interest not to prohibit certain gambling activities, the proceeds of which are used exclusively for public and charitable purposes and do not inure to the benefit of individual members of the organization. The exemptions set forth in R.C. 2915.02(D) are rationally related to that interest, and thus we find no equal protection violation. Whether 501(c)(8) organizations should also be exempted from prosecution under R.C. 2915.02 is a question strictly within the province of the General Assembly. It is not for the court to substitute its judgment on such an issue." Id. at 426, internal citation omitted.
 {¶ 38} We conclude that VFW's equal protection argument is without merit. The Ohio Supreme Court found that the General Assembly's choice to only include 501(c)(3) organizations within the R.C. 2915.02(D) exemptions to be "supported by the legitimate state interest not to prohibit certain gambling activities, the proceeds of which are used exclusively for public and charitable purposes * * * [and] [t]he exemptions set forth in R.C. 2915.02(D) are rationally related to that interest * * *." Id. The record does not show that the proceeds from VFW's gambling activities were used exclusively for public and charitable purposes, but shows, to the contrary, that the proceeds from VFW's gambling activities were used to renovate VFW, including new Pergo flooring and new dry walling. We conclude that there is no equal protection violation. Whether 501(c)(19) organizations should also be exempted from prosecution under R.C. 2915.02 is an issue of legislative policy within the province of the General Assembly, and it is not for this court to substitute its judgment on this issue.
 {¶ 39} VFW then contends that R.C. 2915.01 et seq. is unconstitutional, because it violates the separation of church and state, VFW's freedom of association, and VFW's freedom of speech. These arguments are without merit.
 {¶ 40} VFW contends that R.C. 2915.01 et seq. unlawfully endorses religion by allowing religious organizations that gamble an exemption from the gambling statutes, while not allowing VFW, a secular organization, an exemption from the gambling statutes. R.C. 2915.02(D) does not exempt religious organizations, only, but exempts 501(c)(3) organizations that operate exclusively for "religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition * * *, or for the prevention of cruelty to children or animals * * *." R.C. 2915.02(D); I.R.C. 501(c)(3). We conclude that the gambling statutes do not unconstitutionally violate the separation of church and state, because they do not endorse one religion over another or religion in general.
 {¶ 41} VFW contends that R.C. 2915.01 et seq. violates VFW's freedom of association "by effectively depriving the funding necessary to assemble and conduct activities." VFW also contends that 2915.01 et seq. violates VFW's freedom of speech, because it "places content-based restrictions on Appellant's organization by its impermissible regulation on the content of Appellant's values, ideals and purposes for formation." VFW argues that "the State's implicit support of religious-sponsored gambling, but concurrent contempt for veteran-sponsored gambling, is in no small part attributable to the content that each organization promotes."
 {¶ 42} We reject VFW's arguments and agree with the trial court that "one can utilize [one's] right to assemble and [one's] right to expression without gambling." As stated above, R.C. 2915.02(D) does not limit the exemption provided for therein to religious organizations. There is no support for the notion that the State supports only religious-sponsored gambling and "holds contempt" for veteran-sponsored gambling based on "the content that each organization promotes." VFW's arguments are without merit. VFW's first, second, third, and sixth assignments of error are overruled.
 III {¶ 43} VFW's fourth assignment of error is as follows:
 {¶ 44} "The trial court committed error in failing to suppress all evidence in the case before it[.]"
 {¶ 45} VFW contends that the trial court erred in denying its motion to suppress, because the two warrantless entries onto the VFW premises, used to gather information to obtain a search warrant, were unlawful, thereby vitiating the search warrant obtained subsequent to the illegal entries. VFW also contends that the trial court erred in denying its motion to disclose the identity of the confidential informant. VFW alleges that the confidential informant, a law enforcement officer and VFW member, was also an undercover liquor agent. VFW argues that the two entries were unlawful, because a liquor agent may perform an administrative search, but may not perform a search for purposes of obtaining evidence of general criminality with the intent to charge the permittee with a violation contained in R.C. Title 29. VFW argues that the two entries were unlawful, because there was no consent for entry.
 {¶ 46} "`[A] search conducted without a warrant issued upon probable cause is `per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.' Schneckloth v. Bustamonte
(1973), 412 U.S. 218, 219, 93 S.Ct. 2041, 2044, 36 L.Ed.2d 854 (quotingKatz v. United States [1967], 389 U.S. 347, 357, 88 S.Ct. 507, 514,19 L.Ed.2d 576). Consequently, evidence obtained in a warrantless search is generally inadmissible, and under the `fruit of the poisonous tree' doctrine, such evidence cannot serve as probable cause to support a subsequent warrant. Segura v. United States (1984), 468 U.S. 796, 804,104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (citing Wong Sun v. United States
[1963], 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441). However, `one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.' Schneckloth, supra, 412 U.S. at 219, 93 S.Ct. at 2044
(citing f2Davis v. United States [1946], 328 U.S. 582, 593-594,66 S.Ct. 1256, 1261-1262, 90 L.Ed. 1453)." Posey, 40 Ohio St.3d at 427.
 {¶ 47} To establish consent as an exception to the warrant requirement, the State must show that consent was freely and voluntarily given. Id. The Ohio Supreme Court has held that "when an individual gives consent to another to enter a private area wherein illegal activities are being conducted, the consent does not lose its status of being freely and voluntarily given merely because it would not have been given but for the fact that the other person failed to identify himself as a police officer or agent." Id. at 429.
 {¶ 48} It is undisputed that the law enforcement officer made two entries into the VFW, without a warrant, and information gathered from those two entries was used to obtain a search warrant. It is also undisputed that the law enforcement officer was a member of the VFW and entered the VFW through this membership. VFW consented to the law enforcement officer's entry onto its premises as a VFW member. The fact that the law enforcement officer did not identify himself as a police officer or agent does not cause VFW's consent to lose its status of being freely and voluntarily given. See Posey, supra. As long as VFW holds itself open to all those who are members, a member is not obliged to anticipate that certain members, police officers, for example, may not be welcome, and identify himself as a police officer before exercising his privilege, as a member, to enter the premises. We conclude that VFW freely and voluntarily consented to both entries by the law enforcement officer onto its premises, and therefore, the two entries were not unlawful.
 {¶ 49} Because both of VFW's contentions are based on the same argument, we conclude that the trial court did not err in denying VFW's motion to suppress or in denying VFW's motion to disclose the identity of the confidential informant, for the reasons stated above.
 {¶ 50} VFW's fourth assignment of error is overruled.
 IV {¶ 51} VFW's fifth assignment of error is as follows:
 {¶ 52} "The trial court erred in placing vfw post 431 on probation with the conditions imposed below as an organizational penalty unde [sic] R.C. 2901.23 and R.C. 2929.31 as a fine is the only penalty for an organizational violation[.]"
 {¶ 53} VFW contends that its sentence is void, because it was placed on probation for five years and the fine imposed was not suspended. VFW argues that if the fine is not suspended, there is no effectual purpose for probation, and the sentence is void.
 {¶ 54} R.C. 2929.31 states, in pertinent part, as follows:
 {¶ 55} "(A) Regardless of the penalties provided in sections 2929.02,2929.14 to 2929.18, and 2929.24 to 2929.28 of the Revised Code, an organization convicted of an offense pursuant to section 2901.23 of the Revised Code shall be fined in accordance with this section. The court shall fix the fine as follows:
 {¶ 56} "* * *
 {¶ 57} "(7) For a felony of the fifth degree, not more than seventy-five hundred dollars[.]"
 {¶ 58} The trial court sentenced VFW to community control sanctions, for a period not to exceed five years, and ordered VFW to pay court costs, a supervision fee, and a fine of $7,500, $6,000 of which was suspended upon the condition of no future violations of the gambling law.
 {¶ 59} VFW does not contend that the trial court did not have the authority to suspend the sentence, but argues that it did not do so, making the five-year probation period ineffectual. Because the trial court did suspend $6,000 of the $7,500 fine, upon the condition of no future violations of the gambling law, VFW is mistaken and this argument is without merit.
 {¶ 60} VFW also contends that VFW's prior conviction cannot be used in this case to enhance the current charge to a felony, because the trial court failed to determine whether the plea, in the prior case, was properly entered after meaningful colloquy between the trial court and VFW representative at that time.
 {¶ 61} Pursuant to Crim.R. 11(B)(2), a no-contest plea is an admission of the truth of the facts alleged in the indictment. The indictment against VFW states, in pertinent part, that "POST 431 VFW, on or about the 8th day of February in the year two thousand and two in the County of Montgomery, aforesaid, and State of Ohio, did establish, promote or operate or knowingly engage in conduct that facilitated any scheme or game of chance conducted for profit, having previously been convicted in the State of Ohio on November 20, 1998, of a gambling offense, to-wit: Operating a Gambling House, in the case of State of Ohio versus VFW Post 431, being Case Number 98 CRB 14579, in the Dayton Municipal court contrary to the form of the statute (in violation of Section 2915.02(A)(2) of the Ohio Revised Code) * * *." When VFW entered a plea of no-contest in this case, it admitted the validity of the prior conviction alleged in the indictment.
 {¶ 62} VFW's fifth assignment of error is overruled.
 V {¶ 63} VFW's seventh assignment of error is as follows:
 {¶ 64} "It was error for the original trial court to hold appellant's counsel in contempt, and theeafter [sic] rule upon all pending motions and then transfer the case to another judge for trial. The trial court had a duty to transfer the entire case to the newly assigned judge prior to ruling upon the pending motions in order to avoid inherent prejudice toward the appellant. The transferee court has a duty to review the entire file, certify familiarity, and correct and prior adverse rulings."
 {¶ 65} VFW contends that the trial court judge erred in failing to recuse herself prior to ruling on VFW's motion to dismiss, motion to suppress, and motion for the disclosure of the confidential informant. VFW contends that the trial court judge's denial of the motions, after holding defense counsel in contempt, demonstrated bias and prejudice towards VFW and denied VFW due process of law.
 {¶ 66} Article IV, Section 5(C) of the Ohio Constitution provides that "[t]he chief justice of the supreme court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof. Rules may be adopted to provide for the hearing of disqualification matters involving judges of courts established by law." R.C. 2701.031
provides the procedure for disqualifying a court of common pleas judge and states, in pertinent part, as follows:
 {¶ 67} "(A) If a judge of a municipal or county court allegedly * * * has a bias or prejudice for or against a party to a proceeding pending before the judge or to a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the judge, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the court in which the proceeding is pending.
 {¶ 68} "(B) An affidavit of disqualification shall be filed under this section with the clerk of the court in which the proceeding is pending not less than seven calendar days before the day on which the next hearing in the proceeding is scheduled * * *."
 {¶ 69} Because only the Chief Justice of the Ohio Supreme Court or his designee may disqualify a court of common pleas judge, we are "without authority to pass upon disqualification or to void the judgment of the trial court upon that basis. Although a judge would be without power to hear and determine a cause after disqualification, his judgment, however erroneous, before disqualification is not void." Beer v. Griffith
(1978), 54 Ohio St.2d 440, 441-442, 8 O.O.3d 438, 377 N.E.2d 775. VFW has waived this issue on appeal, because it failed to file an affidavit of disqualification and thereby failed to follow the mandates of R.C.2701.031. See Ebbets Partners Ltd. v. Day, Montgomery App. No. 19748, 2003-Ohio-4425, at ¶ 20, citation omitted. Where, as here, a litigant is aware of circumstances that allegedly give rise to a claim that the trial judge is biased and prejudiced, the litigant must raise that issue before trial in the manner prescribed by R.C. 2701.031, or the issue is waived; if that were not the rule, a litigant could wait to see whether the outcome of the trial were favorable, and only after receiving an adverse result, raise the issue of the trial judge's bias and prejudice. Besides being prejudicial to judicial economy, this would not be fair to the opposing party.
 {¶ 70} VFW's seventh assignment of error is overruled.
 VI {¶ 71} All of VFW's assignments of error having been overruled, the judgment of the trial court is affirmed.
Brogan and Young, JJ., concur.
[1] We reversed the judgment of contempt in In re Brannon, Montgomery App. No. 19619, 2003-Ohio-4423, holding that defense counsel's conduct did not constitute criminal contempt of court.
[2] Several amendments have since been made to R.C. 2915.02, but are not applicable to this case, because the amendments became effective July 1, 2003, subsequent to the conduct committed in this case in February, 2002.