The STATE of Ohio, Appellee,

v.

GIBSON, Appellant.

[Cite as *State v. Gibson,* 164 Ohio App.3d 558, 2005-Ohio-6380.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 05CA2834.

Decided Nov. 22, 2005.

David H. Bodiker, Ohio Public Defender, and Daniel L. Silcott, Assistant Public Defender, for appellant.

Scott W. Nusbaum, Ross County Prosecuting Attorney, and Sherri K. Rutherford, Assistant Prosecuting Attorney, for appellee.

McFARLAND, Judge.

{¶ 1} Defendant-appellant, Steven W. Gibson, appeals from a judgment entered by the Ross County Court of Common Pleas denying his motion to suppress in a criminal proceeding filed against him for possession of cocaine in violation of R.C. 2925.11, a felony of the fifth degree. Appellant asserts that the trial court erred in overruling his motion to suppress, arguing that law enforcement unlawfully entered his home unannounced in order to effectuate his arrest. Because we find that the entry was supported by an arrest warrant and was made with the consent of two co-inhabitants of appellant's residence, the entry was lawful. Accordingly, we find that appellant's assigned error is without merit, and we affirm the decision of the trial court.

{¶ 2} The facts pertinent to this appeal, as found by the trial court, are as follows:

{¶ 3} "On April 3rd, 2003, Ross County Sheriff Deputy Carl Lawhorn arrived at the residence of Stacey Gibson located at 3931 State Route 28 in response to Stacey Gibson's complaint that Defendant was not properly watching Stacey's sister's children. Stacey Gibson is the children's aunt. The five children were at Stacey Gibson's residence. After speaking with Stacey Gibson and the children, Lawhorn decided to contact Defendant at his residence located at 3821 State Route 28 to investigate the child endangerment allegations. Before proceeding to Defendant's residence, Lawhorn contacted the Greenfield Police Department to confirm that there were outstanding arrest warrants for Defendant from Highland County.

{¶ 4} "Sergeant Dave Faulkner and Officer Jeremiah Oyer of the Greenfield Police Department met with Lawhorn at Defendant's residence to assist Lawhorn and execute the arrest warrants. Stacey Gibson and two of the children, Tasha and Tangee[,] entered Defendant's residence. Tasha and Tangee then came outside and told Lawhorn and Faulkner that Defendant was upstairs. Upon the children's invitation, Lawhorn and Faulkner entered Defendant's residence. Before entering, the officers knocked on the door and announced their presence. The officers proceeded upstairs and could see Defendant in an upstairs bedroom sitting on a bed. Defendant was then arrested on the outstanding warrants. After Defendant was advised of his *Miranda* rights and handcuffed, Defendant requested that he be allowed to take some clothing with him when he was taken to Highland County. Defendant told Lawhorn [in] which dresser drawers the clothes he wanted could be located. When Lawhorn opened the top drawer, he noticed a bottle cap with a plastic baggy inside which contained a white powder. Based on his training and experience, Lawhorn suspected the powder was cocaine. A field test determined the powder to be cocaine. Defendant was then turned over to the Greenfield police on the outstanding warrants. Defendant was subsequently indicted by the Ross County Grand Jury for Possession of Cocaine."

{¶ 5} Appellant moved for suppression of the evidence gathered at his residence on the basis that the officers illegally entered his residence without having a search warrant. The trial court overruled appellant's motion, and appellant subsequently pleaded no contest to possession of cocaine and was sentenced to ten months' imprisonment.

{¶ 6} Appellant now brings his appeal, assigning the following error for our review:

{¶ 7} "I. The trial court erred in overruling defendant's motion to suppress."

{¶ 8} In his sole assignment of error, appellant argues that the trial court erred in overruling his motion to suppress filed in connection with his arrest on outstanding warrants, which resulted in a new charge of possession of cocaine. In support of this argument, appellant alleges that deputies entered his home without knocking or announcing their presence and without consent, placed him under arrest and found contraband (cocaine) in plain view. Appellant concedes that contraband seized in plain view is permissible if found during the context of a lawful arrest; however, appellant argues that the deputies unlawfully entered his home, thereby rendering his arrest unlawful and ultimately rendering the seizure of the contraband unlawful. In support of this argument, appellant cites the knock-and-announce rule and also argues that the entry was nonconsensual.

{¶ 9} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Featherstone*, 150 Ohio App.3d 24, 2002-Ohio-6028, 778 N.E.2d 1124, at ¶ 10, citing *State v. Vest* (2001), Ross App. No. 00CA2576, 2001 WL 605217; *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. In a motion to suppress, the trial court assumes the role of trier of fact, and as such is in the best position to resolve questions of fact and evaluate witness credibility. See, e.g., *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583; see, also, *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911; *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141; *Williams;* and *Guysinger*.

{¶ 10} We will first address appellant's reliance on the knock-and-announce rule. R.C. 2935.12, which addresses forcible entry in making an arrest and execution of a search warrant, provides:

{¶ 11} "(A) When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance, but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant."

{¶ 12} Appellant asserts that the trial court erred in holding that because the police did not use force to make an entry into the house, R.C. 2935.12 did not apply. Appellant argues that the statutory knock-and-announce requirement does apply here and cites *State v. Davis* (1992), 80 Ohio App.3d 277, 609 N.E.2d 174, in support of his argument. Our review of that holding reveals that *Davis* also held the knock-and-announce statute inapplicable when forcible entry did not occur. Additionally, this court has previously held Ohio's knock-and-announce statute, R.C. 2935.12, to be inapplicable where forcible entry is not at issue. See *Alley v. Bettencourt* (1999), 134 Ohio App.3d 303, 730 N.E.2d 1067 (application of R.C. 2935.12 is limited to entries by violent, forcible action).

{¶ 13} However, the Second District Court of Appeals has taken the analysis of the knock-and-announce rule a step further, analyzing the requirement from a constitutional, rather than a statutory, perspective. See *State v. Lewis* (Nov. 19, 1999), Montgomery App. Nos. 17538 and 17564, 1999 WL 1043901. In *Lewis*, based upon facts indicating that the officer had entered the house with consent and with a search warrant, the court reasoned as follows:

{¶ 14} "The Fourth Amendment to the United States Constitution requires that law enforcement officers execute search warrants in a reasonable manner. R.C. 2935.12 codifies the common law 'knock and announce' rule prohibiting unannounced, forcible intrusions into a dwelling[.] * * * As the Eleventh District Court of Appeals stated in *State v. Campana* (1996), 112 Ohio App.3d 297, 302, 678 N.E.2d 626, R.C. 2935.12 only applies where there is forced entry by an officer. See also *State v. Baker* (1993), 87 Ohio App.3d 186, 621 N.E.2d 1347; *State v. Davis* (1992), 80 Ohio App.3d 277, 609 N.E.2d 174; *State v. Applebury* (1987), 34 Ohio App.3d 376, 518 N.E.2d 977. In *Campana*, police officers knocked on an unlocked door that was ajar, and then proceeded to walk into the room. The Court found that since no violent forcible entry occurred, R.C. 2935.12 did not apply. Id. This interpretation of R.C. 2935.12 is consistent with the interpretation federal caselaw has given 18 U.S.C. § 3109. Under federal law, § 3109 mirrors R.C. 2935.12: The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance * * *."

{¶ 15} In light of the foregoing, we find that the trial court did not err in finding that R.C. 2935.12 is inapplicable to the present set of facts, where the deputies entered the home through an open door without the use of force. However, our inquiry does not end here. We must next address whether the officers had consent to enter appellant's residence.

{¶ 16} Generally, officers may not lawfully make a warrantless and nonconsensual entry into a suspect's home to make an arrest. *Alley,* 134 Ohio App.3d at 312, 730 N.E.2d 1067, citing *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. Further, it has been held that an arrest warrant, founded upon probable cause, as opposed to a search warrant, is required to enter a person's residence for the purpose of effecting an arrest. *Payton,* 445 U.S. 573 at 603, 100 S.Ct. 1371, 63 L.Ed.2d 639. It is a fundamental Fourth Amendment principle that neither a search warrant nor probable cause is required if valid consent to search is given, since consent is an exception to search warrant and probable cause constitutional requirements. *State v. Hardy,* Pike App. No. 96CA588, 1997 WL 106719, citing *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. A valid consent can be given by one other than a defendant if the third party granting such consent possessed common authority over or other sufficient relationship to the premises sought to be searched. *Hardy,* citing *U.S. v. Matlock* (1974), 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242.

{¶ 17} We noted in *Hardy* that in *Matlock,* the court rejected reliance on ownership and established common authority by stating the following:

{¶ 18} "Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements. See *Chapman v. United States* (1961), 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California* (1964), 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that *any of the co-inhabitants* has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (Emphasis added). *Matlock,* 415 U.S. at 172, 94 S.Ct. 988, 39 L.Ed.2d 242, fn. 7.

{¶ 19} In this case, deputies entered appellant's residence at the invitation of appellant's children, ages ten and seven. As the deputies entered the doorway, they announced their presence and proceeded up the stairs into appellant's bedroom and placed appellant under arrest. We find that these facts, as found by the trial court, are supported by competent, credible evidence.

{¶ 20} Appellant argues that Ohio courts have been reluctant to find that children of such tender age have the authority to grant such consent, citing *State v. Pamer* (1990), 70 Ohio App.3d 540, 591 N.E.2d 801, in support. In *Pamer,* the defendant's eight- and thirteen-year-old daughters were held to have authority to

consent to police officers' entry of the defendant's home to investigate a report of domestic disturbance. In *Pamer*, the officers did not have an arrest warrant or a search warrant, but were simply there to investigate. On these facts, *Pamer* held that the children had the authority to provide consent to enter the premises, as opposed to authority to enter for purposes of conducting a search pursuant to a search warrant.

{¶ 21} *Pamer* distinguishes between entrance for purposes of conducting either a warrantless search or search pursuant to warrant and entrance for purposes of questioning an inhabitant, as has been noted by other courts. See *State v. Smith* (July 13, 1995), Cuyahoga App. No. 67522, 1995 WL 415162 (where defendant's 15–year–old son was held to have authority to provide consent to enter for purposes of questioning defendant and then effecting a warrantless arrest), relying on *Davis v. U.S.* (C.A.9, 1964), 327 F.2d 301 (where eight-year-old child consented to police entry into home, and the court upheld the consent).

{¶ 22} The present case is similar to *Pamer, Smith,* and *Davis* in that the deputies did not seek to search appellant's home. Instead, the Ross County Deputy was originally called there to investigate a report of child endangerment. In the course of responding to this call, the deputy confirmed that there were outstanding warrants for appellant's arrest from Highland County. Highland County deputies were called to assist. The deputies approached appellant's residence for reasons that were two-fold: investigation of a report of child endangering and arresting appellant on outstanding arrest warrants, not to conduct a search of the premises.

{¶ 23} Two of the deputies entered appellant's residence with the consent of appellant's ten- and seven-year-old children, who resided at the residence with appellant. No evidence suggests that the entry was anything but consensual. Therefore, on the basis of *Pamer, Smith,* and *Davis,* we conclude that the evidence contained in the record indicates that a valid consent to enter the premises was given by appellant's children.[1]

{¶ 24} Appellant further asserts that for the plain-view exception to justify seizure of evidence, the initial intrusion must be lawful. Appellant hinges his entire argument on his claim that the initial intrusion was unlawful. However, in light of the foregoing, we have found the initial intrusion to be lawful. Therefore,

---

1. In light of the fact that other courts have held minor children to be authorized to provide law enforcement officers with consent to enter in the absence of a search warrant and for the sole purpose of questioning or investigating a report, we find that in a situation where, as here, the officers were there to question appellant, as well as to effectuate his arrest pursuant to two arrest warrants, the children, being co-inhabitants of the residence and the subject of the child-endangerment report, should have authority to consent to the entry of the residence.

any seizure of contraband found in plain view during the arrest of appellant was also lawful.

{¶ 25} However, we find, based on the facts before us, that analysis of the plain-view doctrine is not required where, as here, the evidence seized was not found during a search. Rather, the evidence was found when a deputy, at the request and direction of appellant, opened one of appellant's dresser drawers to retrieve appellant's clothing.

{¶ 26} We find that such a scenario does not implicate the Fourth Amendment. The United States Supreme Court has held, "[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Here, appellant directed the deputy to the drawer in which a bag of cocaine was located so that the deputy could retrieve his clothing.

{¶ 27} "[W]hen an individual consents to a search for specific objects, other evidence in plain view may be seized." Katz, Ohio Arrest, Search and Seizure (2005), Section 14.4. A concurring opinion discussed this type of plain-view seizure in *State v. Claytor* (1993), 85 Ohio App.3d 623, 632–633, 620 N.E.2d 906 (Harsha, J., concurring). The discussion follows:

{¶ 28} "A leading treatise in the area of search and seizure notes the following distinction between the plain view doctrine where there is prior justification for a search and the plain view doctrine where there is no search at all: ' * * * The fact that there is a plain view in the *Coolidge*[2] sense does not mean that there has been no search; indeed, the situations described by Justice Stewart are in the main search situations—search pursuant to a warrant naming other objects, search during hot pursuit, search incident to arrest, and search for purposes other than finding evidence. Rather, the effort in *Coolidge* is to describe when items so found may be seized even though they were not the items which were legitimate objectives of that search. The *Coolidge* plurality identifies three requirements: (1) there must be a prior valid intrusion; (2) the discovery of the seized items must be inadvertent; and (3) it must be immediately apparent to the police that they have evidence before them. The significance of these requirements in terms of justifying a warrantless seizure of evidence is discussed at several points in this Treatise.

{¶ 29} " '*By comparison, the concern here is with plain view in a quite different sense, namely, as descriptive of a situation in which there has been no*

---

**2.** See *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, which set forth standards for seizing objects in plain view.

*search at all in the Fourth Amendment sense. This situation, which perhaps is deserving of a different label so as to avoid confusion of it with that discussed in Coolidge, encompasses those circumstances in which an observation is made by a police officer without a prior physical intrusion into a constitutionally protected area. This includes* the case in which an officer discovers an object which has been left in an "open field" or similar nonprotected area, and also *those cases in which an officer—again, without making a prior physical intrusion— sees an object* on the person of an individual, within premises, or *within* a vehicle. In each of these instances there has been no search at all because of the plain view character of the situation, and this means that the observation is lawful without the necessity of establishing either a pre-existing probable cause or the existence of a search warrant or one of the traditional exceptions to the warrant requirement.

{¶ 30} " 'It is extremely important to understand that the kind of plain view described in the preceding paragraph, because it involves no intrusion covered by the Fourth Amendment, need not meet the three requirements set out in the *Coolidge* plurality opinion. By definition, there is no prior valid intrusion. Whether it is immediately apparent that what has been observed is evidence of crime may have a bearing upon what police may do as a result of the nonsearch observation, but it is clearly irrelevant to the threshold issue of whether the observation was a search.' (Footnotes omitted and emphasis added.) 1 LaFave, Search and Seizure (2nd Ed.1987) 321–322, Section 2.2(a). Other commentators have chosen to characterize this situation as being in 'open view' rather than confusing the issue with the plain view denomination. Nonetheless, the importance of the distinction focuses upon the fact that there is no Fourth Amendment right to privacy involved here. Accordingly, since the Fourth Amendment does not apply here, no Fourth Amendment analysis is needed or appropriate." (Emphasis sic.)

{¶ 31} Although the scenario sub judice does not quite fit within the "open view" description of evidence found in an open field or in an area where there was no prior valid intrusion, we find the prior reasoning to be helpful in determining the context in which seizure of the contraband at issue took place. The deputies were not conducting a search pursuant to a search warrant, nor were they conducting a search incident to arrest. They were simply retrieving clothing for appellant at his direction and request. Therefore, although this fact pattern does not squarely fit within the alternate description of "plain view" or "open view" as described above, it also fails to fit within the traditional understanding of "plain view" as described in *Coolidge*.

{¶ 32} Thus, we find that appellant's sole assignment of error is without merit. Accordingly, we affirm the decision of the trial court.

Judgment affirmed.

ABELE, P.J., concurs in judgment only.

KLINE, J., concurs in judgment and opinion.