[Cite as *State v. Johnson*, 2014-Ohio-5400.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 14CA3618 |
| v. | : | |
| | : | DECISION AND |
| ROCKIE LEE JOHNSON, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | Released: 12/04/2014 |

APPEARANCES:

Lynn A. Grimshaw, Kenneth W. Porter and Rick L. Faulkner, Wheelersburg, Ohio, for Appellant.

Mark Kuhn, Scioto County Prosecuting Attorney and Jay Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

Hoover, J.:

{¶ 1} Rockie Lee Johnson, appellant herein and defendant below, appeals his conviction and sentence from the Scioto County Court of Common Pleas. Johnson entered a no contest plea to one count of having a weapon while under a disability, a third degree felony, and one count of receiving stolen property, a fourth degree felony. The trial court sentenced Johnson to 12 months in prison. Before he pled no contest to the aforementioned counts, Johnson filed a motion to suppress based on an alleged illegal search and seizure of the two weapons found in his bedroom. The weapons were found by police officers searching the residence for a probationer, Paul Charles. The trial court overruled Johnson's motion to suppress.

{¶ 2} Here on appeal, Johnson challenges the trial court's decision to overrule his motion to suppress. For the reasons set forth below, we find that the State failed to prove Paul Charles possessed common authority over Johnson's locked bedroom. Therefore, the validity of the

search for the probationer did not extend to the bedroom. We find the trial court erred in denying Johnson's motion to suppress. The judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.

Procedural and Factual History

{¶ 3} In October 2012, Paul Charles was placed on probation under the supervision of the Portsmouth Municipal Court. According to paperwork from the Scioto County Department of Jobs and Family Services, Charles's address was listed as 260 ½ Egbert Road, Portsmouth, Ohio. A Portsmouth Municipal Court docket sheet also shows the address for Paul Charles as 260 ½ Egbert Road. Appellant Rockie Lee Johnson and Charles's mother, Bev Charles, own and reside at 260 Egbert Road. Both addresses relate to the same residence. During the hearing on Johnson's motion to suppress, the existence or legitimacy of the 260 ½ address was a controversial point.

{¶ 4} According to Johnson, Charles lived in a camper parked in the driveway of the 260 Egbert Road residence. Charles only had access to certain areas inside the house. Johnson testified that the residence was separated into two sections, the front of the house and the back of the house. Johnson testified that Charles only had access to the front of the house. Charles was able to use the restroom facilities in the front part of the residence. In addition, Charles would receive mail at the 260 Egbert Road residence.

{¶ 5} On March 11, 2013, a detective of the Scioto County Sheriff's office spotted an alleged stolen vehicle in the driveway of 260 Egbert Road. Detective Jodi Conkel responded to investigate the situation. Conkel soon learned that the location was Charles's residence and that Charles was on probation. The probation office was contacted about the situation. Conkel

testified that Charles was known to hide from police. When officers arrived at the residence, Shannon Blaine was present; and he told the officers that Charles had been staying there.

{¶ 6} While these events were unfolding, Bev Charles and appellant Johnson were at the sheriff's department on some unrelated matter. Bev Charles and Johnson spoke to Conkel and consented to a search of the house with the exception of a locked bedroom. The bedroom was located on the right side, as someone would enter the residence. The door to the bedroom was locked on the outside with a padlock.

{¶ 7} Despite being granted permission to enter the house, Conkel testified that she and other officers waited approximately one hour, until the probation department arrived, to enter the house. Chief Probation Officer Mark Malone testified that first he verified that Paul Charles was in violation of his probation because he failed to report. After Malone arrived at the house, a search for Charles began. The probation officers and sheriff deputies searched the premises including the camper and the garage. After this search was completed, Malone heard sounds coming from the padlocked bedroom. Malone described these noises as: "scurring around" and "rough noises." Conkel testified that she did not hear any noises.

{¶ 8} At that point, Malone testified that he believed somebody was in the room. Malone asked Shannon Blaine if Paul Charles was in the locked room. Blaine responded that he did not know. Blaine also told Malone that he did not have a key to the lock. When asked why he believed Paul Charles might be in the locked bedroom, Malone responded:

> "The guy on the couch, Shannon, when I asked is he here, he said, "No'[sic], then
>
> he said, "Well I don't know. I just woke up." And then we heard the noise. And
>
> then we were told you can't search there, which lead [sic] me to believe he was in
>
> that -- that room."

Malone then proceeded to gain entry to the locked bedroom by prying the lock out with a screwdriver. Malone entered the bedroom and saw that a raccoon was inside. The raccoon was the source of the noises coming from the bedroom.

{¶ 9} Malone testified that the bedroom contained a variety of stuff, specifically mentioning car stereos. Inside the room, officers also found two firearms underneath the bed. Johnson was charged with one count of having a weapon while under a disability, a third degree felony, in violation of R.C. 29.13(A)(3) and one count of receiving stolen property, a fourth degree felony, in violation of R.C. 2913.51(A) & (C)/ 2923.11. Johnson filed a motion to suppress the evidence seized during the March 11 search. The trial court overruled Johnson's motion. After changing his plea to no contest, Johnson was sentenced to 12 months in prison. Now, Johnson presents this appeal.

Appellant's Sole Assignment of Error:

> THE TRIAL COURT ERRED AS A MATTER OF FACT AND LAW IN
>
> VIOLATION OF DEFENDANT-APPELLANT'S RIGHTS UNDER THE
>
> FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION,
>
> WHEN THE TRIAL COURT DENIED AND OVERRULED DEFENDANT-
>
> APPELLANT'S MOTION TO SUPPRESS.

{¶ 10} Appellant Johnson argues that this case involves two types of voluntary consents to search. The first being the probation search allowed because of the probation status of Paul Charles. The second is the consent given to police officers by Bev Charles and appellant Johnson. Johnson contends that in both circumstances the consent ended at the padlocked bedroom door. Johnson also argues that no exigent circumstances existed to justify the search of the bedroom.

{¶ 11} The State responds that limited consent to search was provided by Johnson in addition to the blanket consent provided by Paul Charles through his probation status. The State argues that Paul Charles had the right to enter the residence at 260 Egbert Road for the purpose of using the restroom, showering and eating among other things. Therefore, the state argues, regardless of whether he was residing there, Paul Charles had permission to use, occupy and possess the home at 260 Egbert Rd. and pursuant to R.C. 2951.02(A) that property was subject to warrantless search by Paul Charles's probation officer.

## Standard of Review

{¶ 12} Our review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case. *Id.*

## Fourth Amendment

{¶ 13} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution guarantee the right of the people to be free from unreasonable searches and seizures. *See State v. Orr,* 91 Ohio St.3d 389, 391, 2001-Ohio-50, 745 N.E.2d 1036. These two provisions contain nearly identical language and the Supreme Court of Ohio has interpreted them as affording the same level of protection. *Id.* "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *Katz*

*v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Once the defendant

demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the

state to establish that the warrantless search or seizure was constitutionally permissible. *See State*

*v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98; Maumee v. Weisner, 87

Ohio St.3d 295, 297, 720 N.E.2d 507 (1999); Xenia v. Wallace, 37 Ohio St.3d 216, 524 N.E.2d

889 (1988), paragraph two of the syllabus.

Warrantless Probation Searches

{¶ 14} The United States Supreme Court has upheld probation searches conducted

pursuant to a condition of probation, provided that a "reasonable suspicion" exists that evidence

of criminal activity can be found in a probationer's home. *State v. Burns*, 4th Dist. Highland No.

11CA14, 2012-Ohio-1529, ¶ 14 citing *United States v. Knights*, 534 U.S. 112, 120-121, 122 S.Ct.

587, 151 L.Ed.2d 497 (2001). The Court also explained:

> Although the Fourth Amendment ordinarily requires the degree of probability
>
> embodied in the term 'probable cause,' a lesser degree satisfies the Constitution
>
> when the balance of governmental and private interests makes such a standard
>
> reasonable. Those interests warrant a lesser than probable-cause standard here.
>
> When an officer has reasonable suspicion that a probationer subject to a search
>
> condition is engaged in criminal activity, there is enough likelihood that criminal
>
> conduct is occurring that an intrusion on the probationer's significantly
>
> diminished privacy interests is reasonable.

*Burns* at ¶ 14 quoting *Knights,* 534 U.S. at 121 (citations omitted); *see also*, State v. Benton, 82

Ohio St.3d 316, 321, 695 N.E.2d 757 (1998); *State v. Sowards,* Gallia App. No. 06CA13, 2007–

Ohio–4863; R.C. 2967.131(C).

{¶ 15} R.C. 2951.02 relates to the supervision of community control. The statute states:

[A]uthorized police officers*** may search, with or without warrant, the person of the offender, ***the place of residence of the offender***or other real property in which the offender has a right, title, or interest or for which the offender has the express or implied permission of a person with a right, title, or interest to use*** if the probation officers have reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with the conditions of the [offender's community control].

(Emphasis Added).

{¶ 16} This case presents a unique set of circumstances that invoke two intermingling sets of legal principles. On one hand, as just mentioned, warrantless searches of a probationer's home have been upheld if reasonable suspicion exists that the probationer is engaged in criminal activity. R.C. 2951.02(A) seemingly provides a broad scope in which probation officers can search, including real property for which an offender has the express or implied permission to use, occupy, or possess.

{¶ 17} Additionally, this case presents a question of consent, demonstrated by the parties' arguments. Here, the appellant Johnson objects to a search based upon the consent from a cohabitant, Paul Charles. In these types of cases, police may have searched a defendant's property because of a third party's consent. *See generally U.S. v. Matlock,* 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). "A valid consent can be given by one other than a defendant if the third party granting such consent possessed common authority over or other sufficient relationship to the premises sought to be searched." *State v. Gibson*, 164 Ohio App.3d 558, 2005-Ohio-6380, 843 N.E.2d 224, ¶ 16 (4th Dist.) (citations omitted). The consent in this case is

represented by the terms and conditions of Paul Charles's probation, which the State argues
authorized officers to search the padlocked bedroom.

{¶ 18} We have previously addressed an issue where a probationer appealed the validity
of a search of his parents' home because the search was outside of his consent. *Burns*, 2012-
Ohio-1529, at ¶ 16. In *Burns*, probation officers visited the home of the defendant-probationer's
parents and saw defendant on the back porch. When defendant saw the officers he ran off from
the house. *Id.* at ¶ 5. An officer found narcotics and money in a flowerpot on the deck of the
home. *Id.* On appeal the probationer argued that the search was invalid because he could not
consent, via being on probation, to a search of his parents home. *Id.* at ¶ 16. This Court stated:

> While we observe that the foregoing principle [common authority] generally is
> invoked when the defendant objects to a search to which a co-occupant consented,
> we believe that the same principle may apply when the defendant objects to the
> consent search on the basis that he did not own the premises and thus could not
> give valid consent. The underlying principle is common authority. In the case at
> bar, appellant, as an occupant of the premises, had common authority over the
> premises. Because appellant shared the premises with his parents, he had common
> authority to consent to a search.
>
> *Id.* at ¶ 17.

We overruled appellant's argument and affirmed the trial court's decision to deny the motion to
suppress.

{¶ 19} Here, the defendant is not the probationer, but a third party whose premises were
searched because of another's probation status. In *Burns*, this Court did not consider whether a
probationer living in a house subjects the entire residence to a warrantless search. The subject

matter of that case was the presence of the defendant on the back porch and the contraband he left in a nearby potted plant. The specific facts here, do not allow us to follow the specific notion that "as an occupant of the premises," one has automatic common authority over all parts of the residence.

{¶ 20} Next, we consider a case from the Fifth District Court of Appeals. A defendant objected to a search based upon his girlfriend's probation status in *State v. Karns*, 5th Dist. Fairfield No. 11CA18, 2011-Ohio-6109. In *Karns*, Misty Castle was on probation and living with her boyfriend, defendant Larry Karns, and his parents. *Id*. at ¶ 4. After Castle failed to report as ordered, probation officers went to the residence. *Id*. at ¶ 9. The officers noticed security cameras attached to the house along with a TV monitor inside the house displaying the surveillance images. *Id*. Mary Karns, mother of the defendant, allowed the officers entry to the home. *Id*. at 15. Mrs. Karns told one probation officer that her son (defendant) and Castle lived in a room across from the entrance door. *Id*. The door to the room was locked. *Id*. Mary Karns told the probation officer that the door was usually locked even when Castle and defendant were home. *Id*. The probation officer testified that the door made him suspicious. *Id*. Mary Karns offered the officer a coat hanger to pry the door open. *Id*. The probation officers gained entry to the room using the coat hanger. *Id.* Inside the room, officers found what they believed to be methamphetamine production and use. *Id.* The trial court upheld the search based upon the totality of the circumstances and denied defendant's motion to suppress. *Id*. at ¶ 25.

{¶ 21} On appeal, the Fifth District Court of Appeals held that "the trial court erred in finding that there was a reasonable suspicion that Castle was engaged in criminal activity and

that evidence or contraband connected with that activity was within appellant's locked room."[1] The outcome here is noteworthy, in that the Fifth District Court of Appeals did not determine that officers had the right to search and ultimately use the findings against the defendant Karns. While the appellate court found reasonable suspicion did not exist, it also implicitly did not allow officers to search Karn's room simply because a probationer shared the dwelling.

{¶ 22} In the case sub judice, the trial court focused on the nature of the 260 Egbert Road residence. Appellant Johnson testified that the 260 ½ address has existed for eight years. Johnson explained that the residence is separated into two separate apartments, with the side and back operating as 260 Egbert Rd., exclusive to him and Bev Charles. Johnson also testified that the locked bedroom was in this area and that Paul Charles had no possessions in the locked room. According to Johnson, Paul Charles lived in the camper parked in the driveway, and only entered the house to shower and use the bathroom. Paul Charles's address was recorded as 260 ½ Egbert Rd. on a court docket entry and a document presented at the hearing from the Department of Jobs and Family.

{¶ 23} However, Deputy Conkel testified that the residence did not appear to be separated in any way. Officer Malone also testified to the same, and also that he conducted previous home visits with Paul Charles inside the 260 Egbert Road residence. Officer Charles also testified that Paul Charles was already in violation of his probation when the events in question occurred.

---

[1] In a dissenting opinion, Judge Farmer states that she would find that the trial court did not err in denying the motion to suppress. The opinion states that Castle failing to report would provide reasonable grounds for an authorized search pursuant to the United States Supreme Court in *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.C.t. 3164, 97 L.Ed.2d 709 (1987) and R.C. 2967.131(C).

{¶ 24} The trial court found the different address to be a scheme to perpetrate welfare fraud. Johnson did testify that he gave the 260 ½ Egbert Road address to Paul "***because Children's Services told him he couldn't live at the same residence." According to our standard of review we must uphold the factual findings of the trial court if supported by credible, competent evidence. *Burnside*, *supra*, at ¶ 8. Therefore, we will defer to the trial court's finding that the addresses were not separate, as appellant Johnson would have this Court believe. Even accepting this fact, we must still decide if under these facts, the trial court came to a correct legal decision regarding the motion to suppress.

{¶ 25} In our view, it is clear that probation officers had the reasonable suspicion to search at least part of the residence at 260 Egbert Road in order to locate Paul Charles. The reasonable suspicion is provided by Officer Malone's testimony that Paul Charles failed to report to his probation officer and a Sheriff Deputy's observation of a car, suspected to be stolen, parked in the driveway at the residence. Probation officers therefore had authority to search the probationer's "***residence, person, and/or personal possessions," pursuant to his conditions of probation. However, the ultimate issue here, is whether the validity of the officers' search extended to the padlocked bedroom.

{¶ 26} We find, upon review of the record that the trial court erred in denying Johnson's motion to suppress. Even accepting the fact that the 260 and 260 ½ addresses were only used to perpetrate welfare fraud, the probation search only extends to the probationer's "residence ***or other real property in which the offender has a right, title, or interest or for which the offender has the express or implied permission of a person with a right, title, or interest to use." Paul Charles's status as a probationer and the agreement he signed with the Portsmouth Municipal Court acts as consent to search his residence. However, like other third parties with respect to a

separate defendant, Paul Charles must possess "common authority over or other sufficient relationship to the premises sought to be searched." *Gibson*, *supra*, at ¶ 16.

{¶ 27} " 'Common authority' rests on the mutual use of the property by persons having joint access or control for most purposes." *Burns*, 2012-Ohio-1529, at ¶ 16 quoting *Matlock,* 415 U.S. 164, 172, 94 S.C.t. 988, 39 L.Ed.2d 242 (1974). As the situation in *Karns* illustrates, a defendant does not necessarily waive all of his Fourth Amendment rights simply by living in the same house or even the same room as a probationer. The State did not provide evidence that Paul Charles possessed common authority over the padlocked bedroom. The State only proved that Paul Charles had access to certain portions of the house, a fact upon which Johnson agreed. No evidence was presented demonstrating that Paul Charles had joint access or control of the padlocked bedroom.

{¶ 28} Admittedly, this case presents a close question, but the State possesses the burden to establish that a warrantless search was constitutionally permissible. *Roberts*, *supra*, at ¶ 98. We believe that the State failed to prove that Paul Charles had the common authority necessary for his probation status to afford probation officers the authority to conduct a warrantless search of the padlocked bedroom.

{¶ 29} Appellant's sole assignment of error is sustained. The judgment of the Scioto County Common Pleas is reversed; and this matter is remanded for further proceedings consistent with this decision.

                                        JUDGMENT REVERSED AND CAUSE REMANDED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED AND THIS CAUSE REMANDED. Appellee shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.: Concurs in Judgment and Opinion.
Abele, P.J.: Dissents.

For the Court

By:_____
        Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.