[Cite as *State v. Sky Lake*, 2018-Ohio-1707.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case Nos.   17CA15 |
| Plaintiff-Appellee, | : | 17CA16 |
| | : | |
| v. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| SKY LAKE and TRACY L. ELLIS, | : | |
| | : | |
| Defendants-Appellants. | : | **Released: 04/27/18** |

_____
APPEARANCES:

Stephen T. Wolfe, Wolfe Law Group, LLC, Columbus, Ohio, for
Appellants.

Brigham Anderson, Lawrence County Prosecutor, and Daniel Kasaris,
Special Assistant Lawrence County Prosecutor/Senior Assistant Ohio
Attorney General, Cleveland, Ohio, for Appellee.

_____

McFarland, J.

{¶1} Appellants, Tracy Ellis and Sky Lake, Inc., in a consolidated

appeal, challenge the decisions of the trial court denying their motions to

suppress filed in separate cases below. On appeal, Appellants contend that

1) the trial court erred in finding that the warrantless search by law

enforcement officers was justified; and 2) the trial court erred in finding that

a warrant obtained after warrantless police entry was issued on valid

probable cause. However, in light of our determination that the trial court

reasonably concluded that staff at Sky Lake impliedly consented to law enforcement officers entering a game room that contained illegal gambling machines, Appellants' constitutional rights were not violated by the warrantless search, or subsequent search pursuant to a warrant, that occurred as a result. Therefore, Appellants were not entitled to suppression of the evidence obtained as a result of the search. Accordingly, both of Appellants' assignments of error are overruled and the judgment of the trial court is affirmed.

## FACTS

{¶2} Appellants, Tracy Ellis and Sky Lake, Inc., were indicted on April 19, 2016 on multiple misdemeanor and felony counts. Tracy Ellis was indicted for twenty-four counts, including three first degree misdemeanor counts of gambling, twelve third degree felony counts of money laundering, four fifth degree felony counts of possession of criminal tools, three first degree misdemeanor counts of operating a gambling house and two first degree felony counts of engaging in a pattern of corrupt activity. Sky Lake, Inc. was separately indicted on identical counts.

{¶3} The indictments stemmed from a several months-long investigation by investigators from the Charitable Law Section of the Ohio Attorney General's Office, which was initiated after an anonymous

complaint was made indicating that illegal gambling machines were located at Sky Lake, Inc. The record indicates that Appellant Sky Lake, Inc. is a public pay lake and restaurant owned by Appellant Tracy Ellis, and is located in Lawrence County, Ohio. Both Appellants denied the charges and their cases proceeded in the trial court as separate cases. Motions to suppress were filed in each case and a joint hearing on the motions was held June 15, 2017.

{¶4} The State presented Damon Roberts as its sole witness in the suppression hearing. A review of the suppression hearing transcript indicates that Roberts, at the time of the investigations, was a major case investigator with the Charitable Law Section of the Ohio Attorney General's office. Roberts testified that he and his partner, Tim Meyers, initially visited Sky Lake on the evening of January 17, 2014, after receiving an anonymous complaint. He testified that he and Meyers entered the establishment, ordered food and ate. He testified that while standing at the bar drinking coffee after he ate, he could hear bells and pinging sounds and that he was able to observe monitors that were lit up in a dark room near the bar. He testified that based on his experience he recognized the sounds to be those of slot machines. He testified the door to the room with what appeared to be slot machines was kept closed, but did not appear to be locked, and that he

observed individuals leaving the room.  He then left and did not return until March 14, 2014.

{¶5}  During his second visit, Roberts testified that he entered the restaurant with Meyers, he approached the clerk at the counter, and he asked the clerk to give him five ten dollar bills in exchange for a fifty dollar bill. He testified that he told the clerk at that time that he wanted change for the games or machines.  The clerk obliged and made change from cash contained in her apron.  Roberts testified that he and Meyers then walked into the game room, which was about ten steps away from the counter where the clerk was located.  Roberts testified that he did not have to be buzzed into the room and that the door to the room was unlocked.  Roberts testified that there was a sign on the outside of the door to the game room marked either "private" or "employees only."  Upon viewing photos of the facility, Roberts clarified that the door he went through to access the game room was marked "private," rather than "employees only," and that the reference in his written reports indicating the door was marked "employees only" was a mistake.[1]

{¶6}  A review of the transcript further reveals that after entering the game room, the investigators played the machines, printed vouchers and

---

[1] It appears that Roberts prepared written reports related to his visits to Sky Lake, Inc. on March 14, 2014, May 24, 2014, June 20, 2014, and July 1, 2014.  In each report he indicated that the door to the game room was marked "employees only."

then cashed out by following instructions posted in the game room directing them to ring the doorbell in order for a clerk to come to the game room. Roberts testified that the clerk wrote their names down and then paid them from the pocket of her apron. Roberts testified that he went back three additional times after his March visit until July when a search warrant was obtained and executed.

{¶7} Appellants presented one witness in support of their suppression motion, Carol Ellis, wife of Tracy Ellis. Mrs. Ellis testified that there are three doors as evidenced in the photos introduced at the hearing. The door to the far left is located behind the counter, has no sign, and leads into the kitchen. She testified that the middle door is also located behind the counter, is marked "employees only," and leads into the bait room.[2] She testified that the door to the far right leads into the game room and is marked "private." She testified it was her understanding that the door into the game room was kept locked and that individuals had to be "buzzed in" by the clerk. However, she also conceded that she had never worked at Sky Lake, had never tried to go into the game room and was not there on the dates at issue.

---

[2] Mrs. Ellis testified that once in the bait room, one can go through a door to the left in order to enter the kitchen, or can go through a door to the right to enter the game room (through a door which has no sign). Roberts, however, testified that he at no point walked behind the counter in order to gain entrance into the game room.

{¶8}  After permitting oral closing arguments, the trial court issued a written decision on July 3, 2017 denying both of the motions to suppress.  In reaching its decision, the trial court noted that although Sky Lake was open to the public, it had a right to preserve certain areas as private.  However, the trial court determined that Roberts was given implied consent to enter the game room when the clerk provided him change in response to his request for her to do so in order that he could play the machines, followed by the fact that he then walked into the game room unimpeded, played games, printed vouchers, and exchanged them for cash.  The trial court reasoned that the fact pattern demonstrated, at the least, implicit consent to his presence in the game room.  The trial court further opined that it was unclear whether the buzzer was operational or if the door was already unlocked on the dates at issue, but that if the door was locked and Roberts was in fact buzzed in, as described by Mrs. Ellis in her testimony, then Sky Lake had expressly consented to Roberts' presence in the game room.

{¶9}  Thereafter, Appellants entered into plea negotiations whereby they pleaded no contest to the following counts, in exchange for the dismissal of the remaining counts: Tracy Ellis – two counts of first degree misdemeanor gambling and six counts of fifth degree felony possession of

criminal tools[3]; and Sky Lake, Inc. – two counts of third degree felony money laundering and one count of attempted engaging in a pattern or corrupt activity, a third degree felony.[4] Appellant Tracy Ellis was sentenced to a one-year term of community control, as well as ninety days of house arrest, court costs, and forfeiture of $68,251.96. Appellant Sky Lake, Inc. was sentenced to a forfeiture of any and all interest it had in the $68,251.96, which were proceeds of criminal activity.

{¶10} Appellants separately appealed to this Court and the appeals were thereafter consolidated. Appellants now jointly raise two assignments of error for our review.

## ASSIGNMENTS OF ERROR

"I.    THE TRIAL COURT ERRED IN FINDING THAT THE
       WARRANTLESS SEARCH BY LAW ENFORCEMENT
       OFFICERS WAS JUSTIFIED BY CONSENT.

II.   THE TRIAL COURT ERRED IN FINDING THAT A WARRANT
      OBTAINED AFTER WARRANTLESS POLICE ENTRY WAS
      ISSUED ON VALID PROBABLE CAUSE."

## LEGAL ANALYSIS

{¶11} Because Appellant's assignments of error are interrelated, they lend themselves to a joint analysis and we therefore address them in

---

[3] The record indicates that counts fifteen and sixteen, which originally charged Ellis with third degree felony money laundering, were both amended to fifth degree felony possession of criminal tools.
[4] Count twenty-three, first degree felony engaging in a pattern of corrupt activity, was amended to third degree attempted engaging in a pattern of corrupt activity.

conjunction with one another.  Appellants jointly contend, in their first assignment of error, that the trial court erred in finding that the warrantless search by law enforcement officers was justified by consent.  In their second assignment of error, Appellants contend that the trial court erred in finding that a warrant obtained after warrantless police entry was issued on valid probable cause.  Because both of these determinations were made by the trial court in the context of denying Appellants' motions to suppress, we first consider our standard of review when reviewing a trial court's denial of a motion to suppress.

### Standard of Review

{¶12}  Appellate review of a trial court's decision on a motion to suppress raises a mixed question of law and fact. *State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 369, ¶ 60 (4th Dist.); citing *State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, 975 N.E.2d 965, ¶ 6.  Because the trial court acts as the trier of fact in suppression hearings and is in the best position to resolve factual issues and evaluate the credibility of witnesses, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  Accepting these facts as true, we must then "independently determine, without deference to the conclusion of the trial

court, whether the facts satisfy the applicable legal standard." *Hobbs* at ¶ 8;

citing *Burnside* at ¶ 8.

Fourth Amendment

{¶13}  "The Fourth Amendment to the United States Constitution, as

applied to the states through the Fourteenth Amendment, provides: 'The

right of the people to be secure in their persons, houses, papers, and effects,

against unreasonable searches and seizures, shall not be violated, and no

Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the

persons or things to be seized.' " *State v. Eatmon*, 4th Dist. Scioto No.

12CA3498, 2013-Ohio-4812, ¶ 11.  "Section 14, Article I of the Ohio

Constitution also prohibits unreasonable searches and seizures." *Id.*

"Because Section 14, Article I and the Fourth Amendment contain virtually

identical language, the Supreme Court of Ohio has interpreted the two

provisions as affording the same protection." *Id.*; citing *State v. Orr*, 91 Ohio

St.3d 389, 391, 745 N.E.2d 1036 (2001).

{¶14}  " 'The Warrant Clause of the Fourth Amendment protects

commercial buildings as well as private homes.  To hold otherwise would

belie the origin of the Amendment, and the American colonial experience. *

* *' " *State v. Penn*, 61 Ohio St.3d 720, 723, 576 N.E.2d 790 (1991);

quoting *Marshall v. Barlow's, Inc.* 436 U.S.307, 311-312, 98 S.Ct. 1816, (1978).  The Supreme Court of Ohio has further held that "Ohio's parallel provision to the Fourth Amendment also protects commercial buildings in the same manner it protects private homes and offices * * *." *Id.*

{¶15}  "Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *Id.* at ¶ 12; citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967).  " 'Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the [S]tate to establish that the warrantless search or seizure was constitutionally permissible.' " *Id.*; quoting *State v. Smith*, 4th Dist. Ross No. 12CA3308, 2013-Ohio-114, ¶ 12.

{¶16}  It is clear that in this case, law enforcement visited Sky Lake four times to gather information and make observations without a warrant. Further, the observations made and information gathered during those warrantless entries into Sky Lake served as the basis for the later issuance of a search warrant, which resulted in the confiscation of several gambling machines and over $68,000.00.

Consent

{¶17} "One of the well-delineated exceptions to the general prohibition against a warrantless search occurs when the person consents to the search." *See State v. Bloomfield*, 4th Dist. Lawrence No. 14CA3, 2015–Ohio–1082, ¶ 29; citing *State v. Ossege*, 2014–Ohio–3186, 17 N.E.3d 30, ¶ 13 (12th Dist.), and *State v. Morris*, 42 Ohio St.2d 307, 318, 329 N.E.2d 85 (1975). Consent is not an exception to the warrant requirement that is premised upon exigent circumstances; rather it is a decision by a citizen to waive Fourth Amendment rights. Katz, Ohio Arrest, Search & Seizure, Section 20:3 (2015). "No Fourth Amendment violation occurs when an individual voluntarily consents to a search." *State v. Carothers*, 2015–Ohio–4569, 47 N.E.3d 483, ¶ 25 (5th Dist.); citing *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105 (2002). Consent searches are an important tool in police investigations because "a valid consent may be the only means of obtaining important and reliable evidence." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227–228, 93 S.Ct. 2041 (1973).

{¶18} Consent to search can be "obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793 (1990). "The authority which justifies third-party consent does not rest upon the law of property, with its attendant historical and legal

refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *State v. Gordnoshnka*, 8th Dist. Cuyahoga No. 86319, 2006-Ohio-563, ¶ 11; citing *United States v. Matlock*, 415 U.S. 164, 172, 94 S.Ct. 988 (1974); *see also State v Gibson*, 164 Ohio App.3d 558, 2005-Ohio-6380, 843 N.E.2d 224, ¶ 18 (4th Dist.).

{¶19} The State is required to establish, by clear and convincing evidence, that consent to the search was freely and voluntarily given by one with authority to do so. *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988); *State v. Connors–Camp*, 2nd Dist. Montgomery No. 20850, 2006-Ohio-409 ¶ 29; *see also State v. Penn, supra,* at 724 (discussing a terminated employee's versus a current employee's authority to provide consent to search his place of employment). " '[W]hether a consent to search was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances.' " *Posey* at 427; quoting *Schneckloth, supra,* at 227. Further, it is not necessary that the consenting third party have actual

authority over the premises. *State v. Portman*, 2nd Dist. Clark No. 2013-CA-68, 2014-Ohio-4343, ¶ 13, citing *United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir.2007).  Even if an officer erroneously believes that a third-party is authorized to give consent, using an objective standard, third-party consent is valid if an officer looking at the then-available facts could reasonably conclude that the third-party had apparent authority to consent. *Rodriguez* at 186.

Analysis

**{¶20}**  Here, as set forth above, the record reveals that Damon Roberts and his partner entered Sky Lake, Inc., a public restaurant and pay lake on several occasions.  On the first visit they simply ordered food, drank coffee and made observations regarding a room marked private that, when the door would open for people to exit, appeared to contain several screens or monitors that were lit up and that emitted pinging sounds and bells, which, in Robert's experience, were likely slot machines.  On their second visit, the two gained entry via the public entrance and went straight to the counter where they found a clerk working.  Roberts asked the clerk for change for a fifty dollar bill so he could play the games.  The clerk obliged, gave him five ten dollar bills from her apron, and stood by while he and his partner entered the game room located approximately ten steps away.  Once in the game

room, the men played games, printed vouchers, and then summoned the clerk as instructed by a sign on the interior door in order to cash out. The clerk paid them their winnings from cash contained in her apron and they left. Roberts and his partner made additional visits and had the same experience in terms of accessing the room and being paid their winnings.

{¶21} Based upon this fact pattern, we find that the trial court reasonably concluded that staff at Sky Lake, Inc. impliedly consented to the entrance of two undercover officers into their game room in order to observe and play their illegal gambling machines. Further, as noted by the trial court, it is unclear from the record before us whether or not the clerk who gave them change to play the gambling machines may have actually buzzed them in to the game room, or whether the door was simply unlocked. If it was the latter scenario, we agree with the trial court in its opinion that Sky Lake, Inc. staff expressly consented to the entry into the game room, despite it being marked private. We find that *State v. Posey, supra,* is instructive to our analysis, and further find it applicable and controlling to our disposition of this matter.

{¶22} In *State v. Posey, supra,* the Supreme Court of Ohio explained as follows:

> "As the United States Supreme Court has held, '[t]he touchstone
> of Fourth Amendment analysis is whether a person has a

> "constitutionally protected reasonable expectation of privacy." '
> *California v. Ciraolo* (1986), 476 U.S. 207, 211, 106 S.Ct.
> 1809, 1811, 90 L.Ed.2d 210 (quoting *Katz, supra,* 389 U.S. at
> 360, 88 S.Ct. at 516). Accordingly, '[w]hat a person knowingly
> exposes to the public, even in his own home or office, is not a
> subject of Fourth Amendment protection.' *Katz, supra,* at 351,
> 88 S.Ct. at 511. Entry into a home or office with the consent of
> the owner or occupier is thus not a 'search' within the protection
> of the Fourth Amendment. *Maryland v. Macon* (1985), 472
> U.S. 463, 469, 105 S.Ct. 2778, 2782, 86 L.Ed.2d 370." *Posey* at
> 427.

However, we are also mindful that an individual may preserve an area as private in an area otherwise accessible to the public. *Katz, supra,* at 351.

{¶23} *Posey* involved the entrance into a private, nonprofit fraternal organization by undercover officer. The undercover officer entered the private establishment as the guest of a member of the club, and the doorkeeper at the entrance did not ask to see the credentials of the club member upon entrance. *Id.* at 421. Once inside, the pair ordered drinks and observed gambling activity consisting of electronic draw poker machines and instant win tickets. *Id.* The officer actually engaged in those activities while there, and then, based upon his observations, he obtained a search warrant and conducted a search. *Id.*

{¶24} In *Posey*, the appellants argued that no voluntary consent could have been given because the officer did not identify himself as a law enforcement officer and did not disclose that his purpose there involved the

investigation of alleged illegal gambling. *Id.* at 427. Despite the argument, the Court found, under the totality of the circumstances, that "consent was freely and voluntarily given and there was no deception perpetrated." *Id.* In reaching this decision, the Court noted the following facts: 1) that the only thing "deceptive" about the officer's entry was that he did not openly identify himself as law enforcement; 2) that he entered as a guest of a member, "as could any member of the general public[;] and 3) that apparently no credentials were checked at the door, which the Court identified as a further indication that the club had "no reasonable expectation of privacy." *Id.* at 428. Thus, the *Posey* court found valid consent was given by staff members of a private club to enter the club, the entire premises of which was considered to be private, because no credentials were checked prior to entry.

{¶25} In contrast, Sky Lake, Inc. is a public establishment that any member of the public can enter. Further, despite attempting to reserve the gambling room as private by putting a sign marked "private" on the door into the game room, staff checked no credentials and asked for no identification of Roberts and his partner prior to allowing them to enter to play the machines. Based upon these facts we find Sky Lake, much like the appellants in *Posey*, had no reasonable expectation of privacy as to the game room.

{¶26}  Ultimately, the Supreme Court of Ohio in *Posey* held as

follows:

> "Accordingly, we hold that when an individual gives consent to
> another to enter a private area wherein illegal activities are
> being conducted, the consent does not lose its status of being
> freely and voluntarily given merely because it would not have
> been given but for the fact that the other person failed to
> identify himself as a police officer."

Others courts have adopted and applied the reasoning set forth in *Posey* as

well. *See State v. Loom Lodge 1245, et al.*, 10th Dist. Franklin Nos. 90AP-

415, 90AP-438, 90AP-439, 90AP-567 and 90AP-575, 1990 WL 179968

(two police officers gained entry to various lodges by virtue of their private

membership to investigate whether illegal gambling activities were

occurring, where they ordered drinks, observed and played gambling

machines and then left without revealing their identity, using the information

gathered to obtain a search warrant); *State v. VFW Post 431*, 2004-Ohio-

3566, ¶ 47-48 (involving a scenario where a law enforcement officer made

two entries into the VFW, by virtue of his personal membership, without a

warrant to gather information used to obtain a warrant); *State v. Baker*, 87

Ohio App.3d 186, 191-192, 621 N.E.2d 1347 (1993) (applying *Posey* to a

scenario involving an undercover officer gaining entry to a private hall by

invitation of a member, where the officer did not encounter any person at the

door and no one checked his credentials.)

{¶27}  In *Loom Lodge*, the court reasoned as follows:

> "Here, the invitation to enter was for the purpose of engaging in all the activity available at the post upon payment of the appropriate price, including the gambling activity.  Thus, although the entry was not expressly for the purpose of engaging in gambling activity, it was one of the activities permitted." *Loom Lodge* at *3.

The *Loom Lodge* court also reasoned that the officers' initial entry into the Lodge was not a search, nor a seizure, but rather that "[a]ll they gained was what their eyes could observe in plain view once they gained entry," and that "this information was then used as a basis for obtaining a search warrant, and only upon execution of this search warrant was evidence obtained and seized." *Id.*  Under those circumstances, the court reasoned that there was nothing indicating that the entry was unlawful, even though the court characterized it as "deceptive," "where the officers seized no evidence and conducted no real search[.]"  Thus, even characterizing the officers' entry as deceptive, the *Loom Lodge* court, relying on *Posey*, found the officers' entry into the private lodge to be lawful and thus, any observations of items in plain view to be fair game, in light of their lawful presence in the club.

{¶28}  Considering the above-cited case law, which consistently finds, relying on the Supreme Court of Ohio's holding in *Posey, supra,* that entry by undercover officers into private clubs is lawful 1) when the officers enter as a member without disclosing that they are police officers; 2) enter with a

member through a door where a doorperson is present but does not request to see the credentials of the member prior to entry; or 3) enter with a member through a door without encountering a person or having to provide credentials. We find the reasoning of *Posey* applies, even more so, to the facts herein where the establishment at issue is not a private club, but rather a public restaurant and pay lake. Although we are mindful Appellants do have a right to maintain certain areas as private in their otherwise public facility, the facts here do not demonstrate that Appellants actually had a reasonable expectation of privacy as to the game room.

{¶29} Here, Appellants provided no testimony indicating an individual had to be a member or had to present certain credentials in order to enter. There was no testimony indicating what requirements the officers had to meet in order to lawfully enter the game room. There was also no testimony that the individuals Roberts saw exiting the room were private members or had some distinction setting them apart from the general public, or other restaurant/pay lake customers, which allowed them to lawfully enter the game room. Instead, the evidence in the record demonstrates that all one had to do was inform a staff member that he or she wished to play the machines, and then proceed to walk into the game room. Thus, Appellants

did not evidence a reasonable expectation of privacy as to the game room, despite the existence of a sign marked "private" over the door.

{¶30} Applying the foregoing case law to the facts of this case, we find that Roberts and his partner lawfully entered Sky Lake, Inc.  This included entry into the game room, without any form of deception and with the voluntary consent of Appellants, where they proceeded to make lawful observations confirming their suspicions that illegal gambling activity was occurring, which served as the basis for the grant of a subsequent warrant. Under the totality of the circumstances, we find no violation of the Fourth Amendment under this set of facts.  As a result, we find no error on the part of the trial court in denying Appellants' motions to suppress filed in each case.  Accordingly, both of Appellants' assignments of error are overruled and the judgments of the trial court are affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellants.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court,


BY:  _____
Matthew W. McFarland, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**