JOURNAL ENTRY and OPINION
{¶ 1} The state of Ohio appeals the trial court's decision granting defendant Justin Gordnoshnka's (appellee) motion to suppress. After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} On February 25, 2005, in the early morning hours, Cuyahoga County Sheriff Department detectives arrived at 4211 Orchard Park Boulevard, in Parma, Ohio, after an informant told them that appellee was selling large quantities of marijuana from this location. The detectives encountered Michael Gordnoshnka, who is appellee's father and the owner of the property in question. The detectives told Mr. Gordnoshnka that they received information that appellee was selling drugs from his house. Mr. Gordnoshnka permitted the officers to enter his home, after informing them that appellee was not present. Upon entering the house, detectives observed drugs and drug paraphernalia on the kitchen counter in plain view. The officers requested permission from Mr. Gordnoshnka to make a safety check of the residence and he consented. Officers learned that an individual who rented a bedroom from Mr. Gordnoshnka was present with his girlfriend.
 {¶ 3} During this safety check, detectives also learned that two rooms in Mr. Gordnoshnka's house were locked — the room that appellee stayed in and a room in the basement. Detectives then asked Mr. Gordnoshnka for his consent to search the home. Mr. Gordnoshnka voluntarily signed a consent-to-search form. The tenant also signed a consent-to-search form. Detectives asked Mr. Gordnoshnka whether appellee paid rent to him. Mr. Gordnoshnka replied that appellee, who was 22 years old at the time, did not pay rent or help with the bills. When asked why the two doors were locked, Mr. Gordnoshnka replied that those rooms belonged to appellee and he always kept them locked. Mr. Gordnoshnka stated that he did not have a key to the rooms, but he granted the detectives permission to search them. The doors were forced open and, in plain view, detectives found four pounds of marijuana, a crack cocaine rock, drug paraphernalia, cash and a shotgun.
 {¶ 4} On March 9, 2005, a Cuyahoga County grand jury indicted appellee on drug trafficking, possession of drugs and possession of criminal tools, with firearm and schoolyard specifications. On March 25, 2005, appellee filed a motion to suppress the evidence found in the locked rooms based on an illegal warrantless search. After holding a hearing, the court granted appellee's motion to suppress, finding that Mr. Gordnoshnka did not have the authority to consent to a search of the two locked rooms.
 II. {¶ 5} In its sole assignment of error, the state argues that "the trial court erred when it ordered the evidence suppressed." Specifically, the state argues that the detectives had the unlimited consent of Mr. Gordnoshnka to search his premises and the evidence in question was legally obtained from his premises.
 {¶ 6} When ruling on a motion to suppress, the trial court is in the best position to resolve questions of fact and witness credibility. State v. Clay (1973), 34 Ohio St.2d 250. A reviewing court must accept those findings of fact if supported by competent, credible evidence. State v. Schiebel (1990),55 Ohio St.3d 71. However, a reviewing court must independently determine whether, as a matter of law, the facts meet the appropriate legal standard. State v. Shepherd, Cuyahoga App. No. 80104, 2002-Ohio-1264. Generally, a warrantless search conducted without probable cause violates the Fourth Amendment, unless there is consent to the search. Schneckloth v.Bustamonte (1973), 412 U.S. 218, 219. In reviewing a consent to search, we look at the voluntariness of the consent; whether the consenter was authorized to consent; and whether the consenter placed limitations on the consent. See, Id.; State v. Greer
(1988), 39 Ohio St.3d 236.
 {¶ 7} In the instant case, whether Mr. Gordnoshnka was authorized to consent to the search of his son's locked rooms is the only issue before us. It is undisputed that Mr. Gordnoshnka voluntarily signed a consent-to-search form, the scope of which covered the "premises which is located at 4211 Orchard Park, Parma, OH." At no time during the search did Mr. Gordnoshnka retract this consent.
 {¶ 8} According to the state, Mr. Gordnoshnka said he did not have a key to appellee's rooms. He then asked the detectives if they would have to smash the doors if they wanted to get into the rooms. The detectives responded that they did not have a key either. Mr. Gordnoshnka told the detectives to go ahead and break open the door, because he did not want any drugs in his house.
 {¶ 9} According to appellee, on the other hand, his father did not give the detectives permission to break down the doors to his rooms, nor did his father have the authority to grant such permission. However, it is clear from the suppression hearing transcript that after consenting to the search of his home, Mr. Gordnoshnka did nothing to stop the officers from entering his son's rooms. Mr. Gordnoshnka testified that he was sitting in his living room when he heard the detectives kicking in the door to his son's bedroom. At no time before, during or after this incident did Mr. Gordnoshnka attempt to withdraw or limit his consent to exclude the officers from searching the two locked rooms.
 {¶ 10} In weighing this evidence, the trial court found that "the father clearly did not want drugs in his house and I believe knowingly gave consent to search the common areas of the residence." However, the court further found that "[o]nly the defendant could consent to search of the locked room, these two locked rooms. The mere fact that the father/owner had given consent and did not even have the keys to these locked rooms undermines in my opinion any argument relating to apparent authority of those rooms. The father, again, who gave his consent indicated those rooms were solely the defendant's." We must accept as true the trial court's finding that Mr. Gordnoshnka did consent to the search of the two locked rooms. Whether he had the authority, as a matter of law, to give this consent is addressed below.
 {¶ 11} Consent to search can be "obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." Illinois v.Rodriguez (1990), 497 U.S. 177, 181 (internal citations omitted).
"Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."
United States v. Matlock (1974), 415 U.S. 164, 172 (internal citations omitted).
 {¶ 12} Taking this into consideration, Ohio courts have ruled that "a parent who owns or controls the premises in which a child resides has the right to consent to a search thereof even though such search may produce incriminating evidence against the child." State v. Carder (1966), 9 Ohio St.2d 1, 10. See, also,State v. Reynolds (1998), 80 Ohio St.3d 670 (ruling that because the father owned the house and the son did not pay rent, the father's consent to search the son's room was "constitutionally adequate"); State v. Fellows (Feb. 1, 1985), Trumbull App. No. 3265 (concluding that a "mother, as sole owner of the premises and parent of the objecting, nonconsenting son, possessed common authority over or other sufficient relationship to the premises which would permit her to validly consent to the search").
 {¶ 13} Ohio courts have also recognized the limitations of the common authority doctrine, where no such right of access or control exists. See, e.g., State v. Chuey (Apr. 26, 2000), Medina App. No. 2937-M (holding that a tenant in a boarding house, who pays rent but is not related to the landlord, has a reasonable expectation of privacy in his unshared bedroom).
 {¶ 14} Both parties cite to State v. Mignano (Feb. 28, 1990), Summit App. No. 14223, for the proposition that the homeowner may provide a valid consent to search when he or she retains a right of access to the portion of the property in question. In Mignano, a homeowner allowed Mignano to store a car in his garage and put a lock on the garage door, under the condition that the homeowner be allowed to enter the garage upon request. The homeowner had no key to the garage and when police asked to search the garage, the homeowner explained the situation before giving consent. Because the homeowner did not have a key, the detectives called a service to cut the lock off the garage. The court found that this consent was proper because the homeowner retained the right of access to the garage, by mutual agreement. Id.
 {¶ 15} In the instant case, the state maintains Mr. Gordnoshnka still retained a right of access to the locked rooms. "The lack of a key does not outweigh the fact that this consenter was the father of the defendant and the sole homeowner."[1]
In the alternative, the state argues that the law enforcement officers reasonably believed that Mr. Gordnoshnka had authority to consent to the search. The state points to Illinois v.Rogriguez, supra, 497 U.S. at 188, for the proposition that if a reasonable person would believe the consenting party had authority, a warrantless search is permissible.
 {¶ 16} Appellee, on the other hand, argues that Mr. Gordnoshnka had no right of access to the rooms and he recognized his son's ability to exclude him from these rooms. Appellee further argues that it was unreasonable for the officers to believe that Mr. Gordnoshnka had the authority to consent for the following reasons: 1) Mr. Gordnoshnka told the officers the locked rooms were exclusively occupied by his son; and 2) he told the officers he had no keys and no other way to access the room.
 {¶ 17} The instant case presents a set of facts that differs from the Mignano pattern regarding common authority. It is clear that Mr. Gordnoshnka did not have keys giving him immediate access to his son's rooms. Nor did he have a mutual agreement with his son that he could enter the rooms at will. Appellee argues that his father lacked the ability to enter the locked rooms; therefore, he could not authorize someone to do what he could not do himself. Appellee's padlocking his doors evidences his expectation of privacy in the rooms he lived in. We conclude that in this limited fact pattern, where a father allows his son to padlock the doors to the son's rooms without granting him a right of access, the father has no authority to consent to a warrantless search of those rooms.
 {¶ 18} The state also argues that the warrantless search was nonetheless constitutional because it was reasonable for the police to believe that Mr. Gordnoshnka did have the authority to consent to the search. In Rodriguez, supra, 497 U.S. 177, the United States Supreme Court held that a warrantless search may be allowed when the police have a reasonable belief in the consenter's ability to permit access. In Rodriguez, the woman who consented to the search referred to the residence as "our" apartment, said she kept her personal belongings there and produced a key which allowed the police to enter the apartment.
 {¶ 19} The instant case differs from Rodriguez in that Mr. Gordnoshnka referred to the rooms as belonging to his son and immediately told the police that he did not have keys or any other access. In addition, according to the record, the detectives waited for sometime between two and four hours before finally breaking into appellee's rooms. The detectives testified that they were waiting to see if appellee would return home before conducting the search. This implies that the police were unsure if they should proceed, and it shows they had enough time to get a warrant. Taking these facts into consideration, the police could not have reasonably believed that Mr. Gordnoshnka had the authority to consent to the search of appellee's rooms.
 {¶ 20} Accordingly, we find that the court did not err in granting appellee's motion to suppress, and the state's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, P.J., and Sean C. Gallagher, J., concur.
[1] State's brief at 12.