[Cite as *State v. Bradley*, 2017-Ohio-9224.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                         :
                                      :
        Plaintiff-Appellee            :   C.A. CASE NO. 027509
                                      :
v.                                    :   T.C. NO. 2016-CR-1656
                                      :
WATSON BRADLEY, III                   :   (Criminal Appeal from
                                      :    Common Pleas Court)
        Defendant-Appellant           :
                                      :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 22nd day of December, 2017.

. . . . . . . . . .

ALICE B. PETERS, Atty. Reg. No. 0093945, Assistant Prosecuting Attorney, P.O. Box
972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

TRAVIS KANE, Atty. Reg. No. 0088191, 1015 E. Centerville Station Road, Centerville,
Ohio 45459
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

        {¶ 1} Defendant-appellant Watson F. Bradley appeals his conviction and sentence

for one count of having weapons while under disability (prior drug conviction), in violation

of R.C. 2923.13(A)(3), a felony of the third degree; one count of possession of cocaine (less than five grams), in violation of R.C. 2925.11(A), a felony of the fifth degree; and one count of possession of heroin (one gram but less than five grams), in violation of R.C. 2925.11(A), a felony of the fourth degree. Bradley filed a timely notice of appeal with this Court on March 22, 2017.

{¶ 2} The incident which forms the basis for the instant appeal occurred on May 27, 2016, when Dayton Police Officer Cody Hartings was dispatched to a residence located at 50 Glenwood Drive in Dayton, Ohio, in order to investigate an aggravated menacing complaint.[1] Upon arriving at the residence in question, Officer Hartings spoke with Eric Potter, who indicated that his brother-in-law, Bradley, had pointed a handgun at him during a confrontation between the two men. Potter informed Officer Hartings that Bradley was currently in the upstairs bedroom and that the handgun would most likely be located in the closet of that room. Potter also informed Officer Hartings that he was the owner of the house and lived there with his wife, whom he did not identify by name.

{¶ 3} At this point, Officer Hartings, accompanied by Officer Evans, went upstairs and entered the bedroom identified by Potter. Inside the bedroom, the officers observed Bradley sitting on a bed. Officer Hartings asked Bradley whether he and Potter had gotten into a fight earlier. Bradley responded in the affirmative. Officer Hartings testified that Bradley was calm and cooperative at all times. Officer Hartings then asked Bradley if all of the property in the bedroom belonged to him. Officer Hartings also asked

---

[1] Officer Hartings testified that he arrived at the residence in the early afternoon on May 27, 2016; however, the original complaint had been called in at approximately 12:00 a.m. on the previous morning. The record establishes that officers attempted to investigate the complaint at that time, but no one was at the residence when they arrived.

for Bradley's consent to search the room for the handgun that Potter described. Bradley informed the officers that all of the property in the room was indeed his, but he did not live at the house, so he could not give them consent to search the room.

{¶ 4} Officer Evans remained in the bedroom with Bradley while Officer Hartings went back downstairs to speak with Potter. Believing him to be the owner of the residence, Officer Hartings asked Potter if he would sign a consent to search form. Potter signed the consent to search form. Thereafter, Officers Hartings and Evans searched the bedroom where Bradley was located and discovered a handgun, two loaded magazines, various drug paraphernalia, and what was later identified as heroin and crack cocaine. Whereupon, Bradley was handcuffed and arrested.

{¶ 5} On May 29, 2016, Bradley was interviewed by Dayton Police Detective Rod Roberts. Detective Roberts informed Bradley of his *Miranda* rights and asked him to sign a pre-interview form. Bradley signed the pre-interview form and agreed to speak to Detective Roberts without an attorney. Bradley informed Detective Roberts that he actually resided at 809 Ferndale Avenue in Dayton, Ohio. Bradley also stated that he did not live at 50 Glenwood Avenue where he was arrested, but only "stayed there from to time." Bradley further stated that none of the property discovered in the bedroom by Officer Hartings belonged to him.

{¶ 6} Thereafter on July 29, 2016, Bradley was indicted for one count of having a weapon while under disability (prior drug conviction). At his arraignment on August 9, 2016, Bradley stood mute, and the trial court entered a plea of not guilty on his behalf. Bradley filed a motion to suppress all of the physical evidence on August 25, 2016. A hearing was held on said motion on October 6, 2016. At the hearing, Bradley's sister,

Danisha Turner, testified that she was the only legal occupant of the residence located at 50 Glenwood Avenue when her brother was arrested on May 27, 2016. Turner testified that she and Potter had never been married and that he was only her ex-boyfriend. Additionally, Turner testified that while she and Potter were dating, he never lived with her, but only stayed at her house occasionally.

{¶ 7} With respect to her brother, Turner testified that before he was arrested on May 27, 2016, Bradley had been staying at her house for approximately four to five days. Turner testified that Bradley mainly lived with his girlfriend, but she permitted him to keep some of his personal belongings at her house in the upstairs bedroom. Turner testified that she also permitted other relatives and friends to stay in the upstairs bedroom from time to time. Turner was not present at 50 Glenwood Avenue when Bradley was arrested, and she testified that she did not authorize Potter to give consent to search her house.

{¶ 8} On November 8, 2016, the trial court issued a decision overruling Bradley's motion to suppress in its entirety. On December 9, 2016, a second indictment was issued against Bradley, charging him with possession of heroin and possession of cocaine. On December 15, 2016, Bradley filed a second motion to suppress in order to address the new charges. The second motion to suppress contained the same arguments as did Bradley's first suppression motion. On February 6, 2017, the trial court overruled Bradley's second motion to suppress.

{¶ 9} On February 9, 2017, Bradley pled no contest to one count of having a weapon while under disability (prior drug conviction), one count of possession of cocaine, and one count of possession of heroin. The trial court accepted Bradley's no contest

pleas, found him guilty on all counts, and ordered the adult probation department to prepare a pre-sentence investigation report (PSI). On March 9, 2017, the trial court sentenced Bradley to community control sanctions not to exceed five years.

**{¶ 10}** It is from this judgment that Bradley now appeals.

**{¶ 11}** Bradley's sole assignment of error is as follows:

**{¶ 12}** "THE TRIAL COURT ERRED BY RULING THE WARRANTLESS SEARCH OF APPELLANT'S BEDROOM WAS A VALID SEARCH BASED ON CONSENT BEING PROVIDED TO THE SEARCHING OFFICERS."

**{¶ 13}** In his sole assignment, Bradley contends that the trial court erred when it overruled his motion to suppress because Officer Hartings was aware that Bradley was living in the upstairs bedroom at his sister's house, and he did not consent to a search of the room. Bradley further argues that under the totality of the circumstances, no reasonable officer would have believed that Potter had the authority to consent to the search of the upstairs bedroom.

**{¶ 14}** When ruling on a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer,* 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham,* 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). In reviewing the trial court's decision on a motion to suppress, an appellate court must accept the trial court's findings of fact as true, if they are supported by competent, credible evidence. *State v. Dudley,* 2d Dist. Montgomery No. 24904, 2012–Ohio–960, ¶ 6. The appellate court must then determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.*

{¶ 15} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Pressley*, 2d Dist. Montgomery No. 24852, 2012–Ohio–4083, ¶ 18. "Under applicable legal standards, the State has the burden of showing the validity of a warrantless search, because warrantless searches are 'per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well delineated exceptions.' " *State v. Hilton*, 2d Dist. Champaign No. 08–CA–18, 2009–Ohio–5744, ¶ 21–22, citing *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988).

{¶ 16} One of the specifically established exceptions to the warrant requirement is a search that is conducted with consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988). Consent to search can be "obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). "The authority which justifies third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *State v. Gordnoshnka*, 8th Dist. Cuyahoga No. 86319, 2006–Ohio–563, ¶ 11, citing *United States v. Matlock*, 415 U.S. 164, 172, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

{¶ 17} The State is required to establish, by clear and convincing evidence, that consent to the search was freely and voluntarily given by one with authority to do so. *Posey* at 427; *State v. Connors–Camp*, 2d Dist. Montgomery No. 20850, 2006–Ohio–409, ¶ 29.

{¶ 18} It is not necessary that the consenting third party have actual authority over the premises. *State v. Portman,* 2d Dist. Clark No. 2013–CA–68, 2014–Ohio–4343, ¶ 13*,* citing *United States v. Ayoub,* 498 F.3d 532, 537 (6th Cir.2007). Even if an officer erroneously believes that a third-party is authorized to give consent, using an objective standard, third-party consent is valid if an officer looking at the then-available facts could reasonably conclude that the third-party had apparent authority to consent. *Rodriguez* at 186. An officer's belief is not reasonable if the surrounding circumstances would lead a reasonable person to doubt the authority of the third party. *Rodriguez* at 188.

{¶ 19} Based on the evidence presented at the suppression hearing, we conclude that the facts available to Officer Hartings were sufficient to warrant a reasonable belief that Potter had apparent authority to consent to a search of the upstairs bedroom where Bradley was located. As previously stated, Officer Hartings initially made contact with Potter in the early afternoon on May 27, 2016, at the house located at 50 Glenwood Avenue. Potter identified himself as the owner of the home, stating that he lived there with his wife, whom he did not name and was not present. Potter informed Officer Hartings that Bradley was in the upstairs bedroom. Potter further stated that the gun Bradley pointed at him would probably be in the closet in the same upstairs bedroom.

{¶ 20} After making contact with Bradley in the upstairs bedroom, Officer Hartings asked him if the property in the room belonged to him. Bradley responded in the

affirmative. Upon being asked for consent to search the room, Bradley informed Officer Hartings that *he did not live at the house and therefore, could not give the officers consent to search.*

{¶ 21} Believing that Potter was the owner of the home, Officer Hartings went downstairs and asked him to sign a consent to search form. Potter willingly signed the form. Thereafter, the officers searched the upstairs bedroom, finding the handgun, ammunition, and other contraband.

{¶ 22} Upon review, we agree with the trial court and find that Officer Hartings had an objectively reasonable belief that Potter, the consenting party, had authority to give the officers consent to search the upstairs bedroom where Bradley was located. See *State v. Portman*, 2d Dist. Clark No. 2013–CA–68, 2014–Ohio–4343 (upholding consent to search the defendant's vehicle and business based on an escort/rape victim's consent because the victim gave police the keys and the police reasonably believed that she was the defendant's wife); *see also Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (holding that officers had a reasonable belief that the woman who referred to the residence as "our" apartment and produced a key which allowed the police to enter the apartment, had authority to consent to a search). When queried by Officer Hartings, Bradley stated that he did not live at the house and therefore, did not have authority to provide the officers with consent to search the upstairs bedroom. This is a factual finding made by the trial court which we cannot disturb. Notably, Bradley did not assert that he was an overnight guest. In addition to Bradley's statements disavowing any authority to consent to a search, Potter informed the officers that he owned the house and was willing to give consent.

{¶ 23} Because the trial court reasonably concluded that Bradley had no authority to give or deny consent to search and the officers reasonably believed that Potter had the authority to give such consent, the officers' warrantless search was permissible. Bradley's constitutional rights were not violated by the search conducted pursuant to Potter's consent, and he was not entitled to the suppression of the evidence obtained as a result of the search.

{¶ 24} Bradley's sole assignment of error is overruled.

{¶ 25} Bradley's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.

Copies mailed to:

Alice B. Peters
Travis Kane
Hon. Mary L. Wiseman